[No. B182525. Second Dist., Div. Six. May 3, 2007.]

CLARK FERGUS, Plaintiff, Cross-defendant and Appellant, v.
JOSEPH A. SONGER, Defendant, Cross-complainant and Appellant;
SUE FERGUS, Plaintiff and Appellant.

554

**COUNSEL**

Andre, Morris & Buttery, Dennis L. Law, Lisa L. Toke; Hatch & Parent and Diane M. Matsinger for Plaintiff, Cross-defendant and Appellant and for Plaintiff and Appellant.

Ogden & Fricks, Roy E. Ogden and C. Anthony Boyd for Defendant, Cross-complainant and Appellant.

**OPINION**

**YEGAN, J.**—It all started over a quarter of a century ago with a chunk of concrete hurled at Joseph A. Songer (respondent) by Lawrence Bordan, owner of the Pismo Beach Hotel. As a result of this assault, Songer obtained a money judgment against Bordan. Collection was another matter. If there were a gold medal for "judgment avoidance," it would go to Bordan. He delayed collection for over 20 years. Through the extraordinary efforts of his attorney, Clark Fergus (Fergus), respondent eventually became the owner of the hotel and reaped millions of dollars of profits. However, he refused to pay Fergus and he refused to honor an agreement with Fergus's wife (wife). She had agreed to borrow money against her house to refurbish and run the hotel. Given Bordan's penchant for litigation, this was an extremely risky decision.

Now we are presented with issues relating to attorney's fees and breach of a partnership agreement. Unfortunately, we infuse new life into this legal saga. We have no choice unless we are to hold that a nonattorney spouse is bound by the Business and Professions Code and the Rules of Professional Conduct for attorneys. Nonattorney wives and husbands of attorneys retain their individual rights to enter into enforceable contracts after marriage.

Fergus and his wife brought the present action against respondent. They claimed that respondent had refused to pay the amount due under a contin-

gency fee agreement, a modification of that agreement, and a partnership agreement involving wife whereby Fergus and wife would own a 50 percent interest in the hotel. Respondent filed a cross-complaint alleging that Fergus had committed legal malpractice. In a special verdict, the jury found that Fergus had not committed legal malpractice and that he was entitled, as damages, to a reasonable attorney's fee of $1.2 million. It also found that appellants had loaned respondent $133,494, and that he was required to repay these loans. Judgment was entered on the special verdict.

The trial court granted respondent's motion for a new trial on the issue of damages. It denied respondent's motion for a new trial on the malpractice issue.

Fergus and wife appeal from the trial court's order granting a new trial on the issue of damages. They also appeal from the original judgment on the jury verdict. Respondent has filed a cross-appeal from the judgment.

We reverse the order granting a new trial and reinstate the $1.2 million judgment. We reject appellants' other contentions with one exception: We conclude that the trial court erroneously granted the motion in limine excluding evidence of the oral partnership agreement involving wife. This ruling was the functional equivalent of the granting of a nonsuit as to wife's causes of action based on the partnership agreement. We reverse the original judgment to the extent that it, in effect, granted a nonsuit as to these causes of action. We reject respondent's claims on the cross-appeal.

### Factual and Procedural Background

In July 1981 judgment was entered on a personal injury jury verdict awarding respondent damages of $308,000 against Lawrence Bordan, owner of the Pismo Beach Hotel. An abstract of judgment was recorded in San Luis Obispo County. As a result of this recording, a judgment lien attached on the hotel.

Almost immediately after the judgment was entered, Bordan filed for bankruptcy. For almost 20 years, the bankruptcy filing and other Bordan maneuvers obstructed the enforcement of the judgment. In July 1991 respondent renewed the judgment. With interest, the amount of the renewed judgment had increased to $597,959.93.

In late 1995 respondent met with Fergus to discuss the enforcement of the judgment against Bordan. Fergus specialized in commercial collections. Fergus and respondent signed a contingency fee agreement. Fergus agreed to represent respondent in a number of matters, including the enforcement of the judgment against Bordan. Respondent agreed to pay Fergus 45 percent "of all recoveries made."

The contingency fee agreement did not comply with Business and Professions Code section 6147, subdivision (a)(4), which required the agreement to include "a statement that the fee is not set by law but is negotiable between attorney and client."[1]

In June 2001 Fergus filed an application to renew the judgment against Bordan. With interest, the amount of the renewed judgment had increased to $1,189,558.01.

Respondent's judgment lien against the Pismo Beach Hotel was junior to a deed of trust in favor of Mary Siler. The deed of trust secured a debt of approximately $550,000. In August 2001 Fergus filed an action seeking the cancellation of the Siler deed of trust.

Respondent planned to acquire the Pismo Beach Hotel at a sheriff's sale of the property. But he did not have the funds necessary to refurbish and operate the hotel. His total assets consisted of only $15,000 in the bank. Respondent estimated that the hotel would require improvements costing at least $300,000.

In September 2001 Fergus wrote a letter to respondent setting forth the terms of what he characterized as "a novation to our original [contingency fee] agreement." The contingency fee would be raised from 45 to 50 percent, and Fergus agreed to "advance for a short period of time limited but substantial funds towards getting the hotel operational if the hotel is acquired through sheriff's sale and there is a need." Fergus wrote that he and respondent would "in effect [be] 50%–50% partners."

---

[1] Because of this omission, the agreement was voidable pursuant to Business and Professions Code section 6147, subdivision (b): "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." (See also *Alderman v. Hamilton* (1988) 205 Cal.App.3d 1033, 1038 [252 Cal.Rptr. 845] ["The [contingency fee] agreement . . . did not state that the fee was negotiable. Thus, the [clients] had an absolute right to void the contract before or after services were performed."].)

At the end of the letter, there is a space for respondent's signature indicating his approval of the new contingency fee agreement. This space is blank. Fergus did not have a copy of the letter signed by respondent, and he could not remember whether respondent had signed the letter and returned it to him.

Appellants and respondent met in November 2001 to discuss respondent's acquisition of the Pismo Beach Hotel. Wife orally agreed to provide community property funds to respondent for the purpose of refurbishing and operating the hotel until it was sold. The funds would be derived from a home equity loan. Respondent needed the funds because he "was broke." Wife understood that appellants "would be 50–50 partners [with respondent] in a venture" and "would be 50 percent owners of the hotel." Wife "felt that [she] had no alternative to advancing the money because of all the time and energy that Mr. Fergus had put into the lawsuit and the hotel had to be fixed up before it could be sold . . . ." The sale would provide the funds needed to pay Fergus for his legal services. Wife requested that respondent provide documentation of their agreement. Respondent replied, "I will sign anything you want."

On November 29, 2001, after the meeting between appellants and respondent, respondent purchased the hotel for $910,000 at a sheriff's sale. Thereafter, appellants advanced funds to respondent "to be used towards hotel costs." In a letter to respondent dated February 13, 2002, Fergus stated: "As I understand our agreement, we each own 50% of what we get from the Bordan properties. You hold title to any properties in trust one-half for yourself and one-half for me. Any monies that either of us advance towards the properties and on going businesses will be paid back first and then we split the monies thereafter."

In March 2003 judgment was entered canceling the deed of trust in favor of Mary Siler and quieting respondent's title to the Pismo Beach Hotel. Respondent later sold the hotel for $4.8 million. Respondent did not share these proceeds with appellant. Prior to the sale, appellants had filed a complaint against him. As amended, the complaint included 14 causes of action. The causes of action arose from respondent's refusal to abide by the terms of the contingency fee agreement, the modification of that agreement, and the oral partnership agreement involving wife. Appellants sought, inter alia, a 50 percent ownership interest in the hotel. In the alternative, appellants sought to recover the reasonable value of Fergus's legal services.

In December 2004 respondent filed a motion in limine to preclude appellants from introducing "any evidence or information regarding any measure or theory of damages, other than the funds loaned to [respondent] or the reasonable value of the services rendered and costs incurred by Clark Fergus . . . ." Respondent argued that the 45 percent contingency fee agreement was unenforceable because it did not state that the contingency fee was negotiable. He also argued that the September 2001 modification of that agreement, which increased the contingency fee to 50 percent and stated that Fergus and respondent would "in effect [be] 50%–50% partners," was unenforceable for an additional reason: Contrary to rule 3-300 of the Rules of Professional Conduct of the State Bar of California (hereafter rule 3-300), respondent had not consented in writing to the modification.[2]

At the conclusion of the hearing on the in limine motion, the trial court precluded appellants from introducing any evidence that the parties had agreed to a 45 percent or a 50 percent contingency fee. The trial court concluded that the contingency fee agreement and modification thereof are unenforceable because "they are contrary to the Business and Professions Code and/or the Rules of Professional Conduct . . . ." The court rejected appellants' contention that respondent had ratified the agreements. In addition, the court concluded: "To the extent that [the 50 percent agreement has] any relevancy under any theory of partnership entered into by [wife], . . . there is no way to adequately sever and separate the extent to which [wife] entered into a partnership agreement from the underlying unenforceable fee agreement entered into by her husband." Thus, the court excluded evidence of the oral partnership agreement involving wife.

During trial, the court excluded testimony by appellants' expert that a reasonable attorney's fee "would be 45 per cent or 50 percent of the recovery made." It ruled that, because Fergus had violated "professional ethical rules," his recovery must be limited "to quantum meruit based upon a reasonable hourly rate for hours actually worked." Any testimony "regarding contingent-fee recoveries" would be inadmissible. The court opined: "I think

---

[2] Rule 3-300 provides: "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition."

that this case should generally follow the parameters of the work that Mr. Fergus was expected to do and did perform, and the reasonable value of that work. That is going to include all of the work that he did for [respondent], including work to obtain, preserve and enhance the value of the hotel."

On the other hand, the trial court permitted Fergus to testify that he had a contingent-fee arrangement with respondent whereby he would "get paid at the end based upon the . . . results that are obtained," not on the number of hours worked. Fergus further testified that he would get paid only if he "collected money on [respondent's] behalf . . . ." Because of the contingent-fee arrangement, Fergus did not accurately keep track of all of his hours. According to Fergus, he had worked "far more" hours than the 1,826.5 hours shown on a computer printout of his time records, but he did not give an estimate of the additional hours worked. Starting in the latter part of 1993, Fergus's hourly rate was $320.

The trial court instructed the jury: "In calculating a reasonable attorney's fee, the following [nine] factors should be considered: [¶] (1) The amount of the fee in proportion to the value of the services performed. [¶] (2) The novelty and difficulty of the questions involved and the skill necessary to perform the legal services properly. [¶] (3) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. [¶] (4) The amount involved and the results obtained. [¶] (5) The time limitations imposed by the client or by the circumstances. [¶] (6) The nature and length of the professional relationship with the client. [¶] (7) The experience, reputation, and ability of the attorney performing the services. [¶] (8) The time and labor required. [¶] (9) The informed consent of the client to the fee." The trial court further instructed the jury as follows: "After considering the nine factors that I have given you, you shall determine the amount of a reasonable attorney's fee based upon hours you determine were worked by Plaintiff Clark Fergus and the hourly rate that you determine to be reasonable for his work."

During deliberations, the jury sent the court a note inquiring, "Can we base compensation fees to Mr. Fergus on a contingency basis?" The trial court answered, "No."

The jury returned a special verdict. It determined that Fergus was entitled to a "reasonable attorney's fee" of $1.2 million. In addition, it determined that appellants had loaned $133,494 to respondent and were entitled to have this amount repaid to them. As to respondent's cross-complaint, the jury

found that Fergus had not committed any malpractice that had harmed respondent. The trial court entered judgment on the special verdict.

Respondent moved for a new trial on the following four grounds: "1. Excessive damages were awarded; [¶] 2. The evidence is insufficient to justify the verdict; [¶] 3. The verdict is against law; and [¶] 4. Inadequate damages were awarded by the jury on Cross-complainant's malpractice claim."

On April 6, 2005, the trial court denied respondent's motion for a new trial on his malpractice cross-claim. It ordered a new trial on the issue of damages awarded to appellants. A minute order to this effect, dated April 6, 2005, does not state the grounds or reasons for ordering a new trial. A copy of the minute order is attached as appendix A.

Fifteen days later, on April 21, 2005, the trial court filed an order entitled, "Order Granting Motion for New Trial." The order, signed by the trial judge, sets forth the grounds and reasons for granting a new trial on the issue of damages. The court noted that it had instructed the jury "that no percentage fee recovery would be allowed, and that damages would be limited to an hourly rate multiplied by the number of hours expended by . . . . Clark Fergus." "The only evidence submitted at trial regarding the actual number of hours expended by Clark Fergus on behalf of [respondent] . . . was (1) approximately 24 boxes of legal files and documents reviewed or generated by . . . Clark Fergus, (2) a binder of billings in the approximate amount of $500,000 to $600,000 . . . , and (3) [Fergus's] vague assertions that the billed hours did not reflect his actual time which was undoubtedly higher (in some unexplained amount) than his records reflected. No estimates or projected numbers of hours actually spent were ever produced in the evidence." "[T]he verdict," however, "was in the amount of $1.2 million dollars, which amount is exactly 25% of the amount of recovery which [appellants] argued [respondent] received as a result of . . . Clark Fergus' effort . . . ." The trial court opined that the evidence "would suggest an award in the range of $500,000 to $600,000, rather than $1.2 million." Accordingly, the trial court concluded that, if the jury had followed the instructions, it "should have reached a different verdict as to the amount of damages representing attorney's fees . . . ." The court declared that it "therefore grants [respondent's] Motion for New Trial as to the amount of damages for attorney's fees . . . on the grounds of excessive damages [citation] and the grounds of insufficiency of the evidence to justify the verdict [citation] or that the verdict is against law [citation]."

## APPELLANTS' APPEAL FROM ORDER GRANTING NEW TRIAL AS TO DAMAGES

### Code of Civil Procedure Section 657

█ Pursuant to Code of Civil Procedure section 657,[3] an order granting a new trial " 'must state the ground or grounds relied upon by the court' and 'may contain the specification of reasons.' If the initial order does not contain the specification of reasons, then the court must prepare, sign and file such specification within 10 days." (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 902 [215 Cal.Rptr. 679, 701 P.2d 826].) Our Supreme Court has held " 'that the prescribed 10-day period is a statute of limitations on the authority of the court to act, and that after the expiration of the period the court has no power to add a specification of reasons by a *nunc pro tunc* order or otherwise.' [Citations.]" (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 418 [118 Cal.Rptr. 761, 530 P.2d 1073].) Thus, a specification of reasons filed 57 days after the initial order granting a new trial "was an act in excess of [the trial court's] jurisdiction and is therefore a nullity." (*Ibid.*) "The 10-day limitation is a statute of limitations, and is mandatory and jurisdictional. [Citation.] A specification of reasons filed after the 10-day limit is in excess of jurisdiction and therefore void. [Citation.]" (*Hand Electronics, Inc. v. Snowline Joint Unified School Dist.* (1994) 21 Cal.App.4th 862, 867–868 [26 Cal.Rptr.2d 446].)

"[S]ection 657 requires an appellate court to affirm a new trial order if it should have been granted on any ground stated in the motion. However, an appellate court cannot affirm on grounds of insufficiency of the evidence or of inadequate or excessive damages unless such ground is stated in the new trial order." (*Sanchez-Corea v. Bank of America, supra,* 38 Cal.3d at p. 905.) Nor can an appellate court affirm on these grounds if the trial court has failed to file its specification of reasons within 10 days after the entry of the new trial order in the permanent minutes. (*La Manna v. Stewart, supra,* 13 Cal.3d at pp. 418, 425.)

Here the trial court's specification of grounds and reasons for ordering a new trial was filed 15 days after the initial minute order of April 6, 2005, granting respondent's motion for a new trial. After briefing was complete, we requested that counsel file letter briefs on the various following issues which we now resolve.[4]

---

[3] Except as otherwise stated, all statutory references are to the Code of Civil Procedure.

[4] We framed the issues as follows: (1) "Is the minute order [of April 6, 2005,] defective because it did not state any grounds for the new trial order? [Citation]. Is the specification of reasons a nullity because it was not filed within the 10-day period required by . . . section 657 . . . ? [Citations.]" (2) "Assuming that the trial court's new trial order is defective for not

*Is the Minute Order Defective and the Specification of
Reasons a Nullity?*

Respondent contends that we need not even consider this issue because appellants have waived their right to appeal from the order granting a new trial. We disagree. The notice of appeal expressly states that appellants are appealing from the "Order granting Defendant and Respondent's motion for a new trial . . . ." In their letter brief, appellants urge us to reverse the order granting a new trial "and reinstate the verdict and judgment."

■ Respondent next contends that the minute order of April 6, 2005 (see appen. A, *post*, at p. 580), does not constitute a determination of the motion for a new trial within the meaning of section 660. This section provides in relevant part: "A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk." (§ 660.) The entry of a new trial order in the permanent minutes of the court ". . . shall constitute a determination of the motion" where, as here, "such minute order as entered expressly directs that a written order be prepared, signed and filed." (§ 660.) The minute order here expressly directs respondent to "prepare the order and submit [it] to the Court with approval as to form."

Respondent also argues that the minute order is not "an order ruling on the motion." This argument is also without merit. The minute order states: "The motion for new trial is granted as to the issue of the amount of [appellants'] damages only. The motion for new trial is denied as to the issue of malpractice."

■ Respondent also argues that "there is no evidence that the Clerk's April 6th minutes of the proceedings were ever 'entered in the permanent minutes of the court.' " Our Supreme Court has observed that "there [are] three elements essential to the entry of an order in the permanent minutes—to wit, preparation of a written order, recordation of its date and substance in a permanent record, and delivery to the custodian of records." (*Hollister*

stating grounds and/or that the specification of reasons is a nullity, are we precluded from affirming the order granting a new trial on the grounds of excessive damages or insufficiency of the evidence? [Citations.]" (3) "Is the verdict against law, i.e., 'considering the evidence in the light most favorable to [appellants], and indulging in all legitimate and reasonable inferences indulged in to uphold the jury verdict if possible,' is there no substantial evidence in the record supporting the jury's determination that Fergus was entitled to a reasonable attorney's fee of $1,200,000? [Citation.]"

*Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 671 [125 Cal.Rptr. 757, 542 P.2d 1349].) These three elements have been satisfied. The minute order is in writing, and it permanently records the date and substance of the trial court's order. Furthermore, since the minute order indicates that it was prepared and filed by a deputy clerk of the superior court, it was permanently delivered to the custodian of records. Pursuant to Government Code section 69844, the custodian of records is the superior court clerk: "The clerk of the superior court shall keep the minutes and other records of the court, entering at length within the time specified by law, or forthwith if no time is specified, any order, judgment, and decree of the court which is required to be entered and showing the date when each entry is made." (*Ibid.*) We presume that the deputy clerk, acting as the superior court clerk's agent, fulfilled his or her duty of entering the trial court's order "forthwith." ▮ "Evidence Code section 664 provides a presumption that 'official duty has been regularly performed.' This presumption applies to the duties of clerks of court. [Citations.]" (*Estate of Crabtree* (1992) 4 Cal.App.4th 1119, 1125 [6 Cal.Rptr.2d 224].) The presumption is supported by the fact that the minute order is dated April 6, 2005.

Respondent argues that the trial court's specification of grounds and reasons for its order, filed on April 21, 2005, should be deemed to have complied with the requirements of section 657 because it was filed within the 60-day jurisdictional period of section 660. "After the court is presented with a motion for a new trial, its power to rule on the motion expires at the end of the 60-day period provided by section 660. The period runs from the mailing of notice of entry of judgment by the clerk or the service of notice of entry of judgment, whichever is earlier, or if no such notice is given, from initial notice of intent to move for new trial. (§ 660.)" (*Sanchez-Corea v. Bank of America, supra,* 38 Cal.3d at p. 899.) A similar argument was rejected by the appellate court in *Fry v. Young* (1968) 267 Cal.App.2d 340 [73 Cal.Rptr. 62]. The court expressed concern that, if it permitted the nunc pro tunc addition of reasons and grounds, it would frustrate the legislative intent "to require that full judicial deliberation on motions for new trial be practically concurrent with judicial disposition of such motions. [Citation.] . . . And it would further confuse the proceedings by converting the 10-day limitation on the specification of reasons [citations] into one which was subject to repeated renewal during the 60-day period—if not beyond it—every time the trial court chose to make yet another nunc pro tunc correction of grounds." (*Fry v. Young, supra,* 267 Cal.App.2d at pp. 346-347, italics omitted.)

*Sanchez-Corea v. Bank of America, supra,* 38 Cal.3d 892, does not assist respondent. In *Sanchez-Corea* the trial court granted the defendant's motion for new trial on the last day of the 60-day jurisdictional period. (§ 660.) No grounds or reasons for granting a new trial were specified in the minute order. Seven days later, the trial court "filed an 'Order Granting New Trial' . . . This

second order explained that the sole ground for granting the motion was insufficiency of the evidence." (38 Cal.3d at p. 898.) The second order also set forth reasons for granting the motion. The defendant contended that the initial order's failure to state the grounds for the new trial was cured by the second order stating both grounds and reasons because it was filed within the 10-day period allowed by section 657.

Our Supreme Court concluded that the 10-day period of section 657 applies only to the specification of reasons. The statute does not permit the trial court to state grounds within 10 days after the initial order granting a new trial. The court, therefore, held: "To the extent the second order, entitled by the trial court 'Order Granting New Trial,' purports to rule on the motion and state insufficient evidence as the ground therefor, it is defective as in excess of the 60-day jurisdictional period [of section 660]. [Citation.]" (*Sanchez-Corea v. Bank of America, supra,* 38 Cal.3d at p. 903.) The court did not consider whether, as in the instant case, an initial order entered in the permanent minutes that states neither grounds nor reasons for granting a motion for a new trial can be cured by a second order filed more than 10 days later but within the 60-day statutory period of section 660.

Respondent contends "that the 10-day limitation for filing a specification of reasons applies solely to an order granting a motion for a new trial signed by the judge and filed with the clerk. The 10-day limitation set forth by section 657 has no application to *minutes.*" A similar contention was rejected by the appellate court in *Swanson v. Western Greyhound Lines, Inc.* (1969) 268 Cal.App.2d 758 [74 Cal.Rptr. 383]. The *Swanson* court concluded: "The adoption of this argument 'would frustrate the . . . Legislature's intent to require that full judicial deliberation on motions for new trial be practically concurrent with judicial disposition of such motions.' [Citation.]" (*Id.,* at p. 760.) Accordingly, the appellate court held "that the [trial] court's jurisdiction to specify its reasons expired 10 days after the minute entry was made; the specification filed on July 21 was ineffective." (*Ibid.*; see also *Kolar v. County of Los Angeles* (1976) 54 Cal.App.3d 873, 876–877 [127 Cal.Rptr. 15] [minute order determining motion for a new trial need not be signed by the judge].)

■ Thus, the minute order of April 6, 2005, granting respondent's motion for a new trial, constituted a determination of the motion within the meaning of section 660. The order was defective because it did not state the grounds for granting the motion. Moreover, the specification of reasons for granting the motion, filed on April 21, 2005, was a nullity because it was filed more than 10 days after entry of the order granting a new trial in the permanent minutes.

## Verdict Against the Law

"If an order granting a new trial does not effectively state the ground or the reasons, the order has been reversed on appeal where there are no grounds stated in the motion other than insufficient evidence or excessive or inadequate damages. [Citations.] If, however, the motion states any *other* ground for a new. trial, an order granting the motion will be affirmed if any such other ground legally requires a new trial. [Citations.]" (*Sanchez-Corea v. Bank of America, supra*, 38 Cal.3d at p. 905.)

The only other ground stated in the motion for a new trial was that "[t]he verdict is against law." "In contrast to the grounds of insufficient evidence and excessive 'or inadequate damages, 'the ·phrase "against law" . does not import a situation in which the court weighs the evidence and finds· a balance against the verdict, as it does in considering the ground of insufficiency of the evidence.' [Citation.] Because the 'against law' ground is distinct ·from the ground of insufficiency of the evidence, a new trial order must be affirmed as against law even though that ground is not stated in the order or ·supported by a specification of reasons. [Citations.]" (*Sanchez-Corea v. Bank of America, supra*, 38 Cal.3d at p. 906.)

"The jury's verdict was 'against law' only if it was 'unsupported by any substantial evidence, i.e., [if] the entire evidence [was] such as would justify a directed verdict against the part[ies] in whose favor the verdict [was] returned.' [Citations.] '[T]he function of the trial. court on a motion for a directed verdict· is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict.' [Citations.] Accordingly, we examine the record to determine whether the verdict for [appellants] was, as ,a matter of law, unsupported by substantial evidence. In our examination we apply the well established rule of appellate review by considering the evidence in the light most favorable to the prevailing party, here the [appellants], and indulging in all legitimate and reasonable inferences indulged in to uphold the jury verdict if possible. [Citations.]" (*Sanchez-Corea v. Bank of America, supra*, 38 Cal.3d at pp. 906–907.)

We conclude that substantial evidence supports the jury's determination that Fergus was entitled to a reasonable attorney's fee of $1.2 million. Fergus's normal hourly rate was $320, but the jury could have reasonably concluded that, based on the nine factors (see, *ante*, at p. 561), he was entitled to considerably more than his normal hourly rate. Fergus's services were not normal; they were extraordinary. An expert witness—Bruce Hogan—testified: "The result of the judgment enforcement portion of the [contingency fee] agreement was spectacular. The $308,000 judgment that

[respondent] had obtained back in 1982 turned into a $4.8 million jackpot for him when the hotel was finally sold in 2004. All of these matters required a huge amount of work by Mr. Fergus."

Fergus's work on Songer's lawsuits was so time consuming that the jury could have reasonably concluded that it had precluded him from accepting other employment. Although a computer printout of Fergus's time records showed that he had logged 1,826.5 hours, the jury could have reasonably found that he had worked many more hours. Fergus testified that the time records were not "even close to thorough" and that he had actually worked "far more" hours on respondent's matters. Fergus explained that the time records were incomplete because he had believed that he was working on a contingency basis: "[I]f I'm billing somebody on [an] hourly basis, then I try to create records of what that might be on an hourly basis; and if I'm doing it on a contingency basis, then in essence, I'm not doing it for billing purposes. I'm really doing it to have some idea of the direction I'm going and for me to be able to get a reflection over a period of time of what I may have done for office administration and management purposes."

For example, Fergus did not log all of his telephone calls. Of those that he did log, he generally allocated only 12 minutes for each telephone call irrespective of the actual length of the call. Fergus explained, "We have telephone conferences. Sometimes we may have telephone conferences that will last a couple of hours. Sometimes you don't put any record in. And when I say you don't put any record in, what I am saying is, there's no obligation upon you because you're assuming that you're going to get paid at the end based . . . on the amount of results that are obtained. If you get nothing [for your client], you get nothing [in compensation]."

Furthermore, the computer printout of Fergus's time records was not complete because the original data had been lost when his computer and backup system had failed in the summer of 2002. Fergus hired a data recovery service to try to retrieve the lost data, and the computer printout was "the result of output to a printer of what data they were able to recover." Fergus testified: "[T]his document was recreated as best we could to show data of what went on with regards to Songer's matters. . . . And . . . there is skewed data."

Fergus introduced into evidence 24 "banker's boxes" of "work product done relating to [respondent's] matters." Based on the materials in these boxes, Fergus prepared a 123-page detailed summary of the work performed for respondent. According to this summary, the work involved 32 matters in 14 courts and administrative tribunals. Fergus prepared "390 responsive/initiating pleadings." Of these pleadings, 268 were related to actions in state courts and

administrative tribunals, while 122 were related to actions in federal courts. There were 57 hearings and trials.

Considering the materials in the 24 banker's boxes, the 123-page summary of Fergus's work based on those materials, the computer printout of Fergus's time records, the trial testimony, and the nine factors set forth in the trial court's instructions, the jury could have reasonably concluded that Fergus was entitled to an attorney's fee of $1.2 million.[5] Accordingly, the jury's verdict was not "against the law" and must be reinstated.

### Appellants' Appeal from Underlying Judgment

### Standard of Review

■ "A motion *in limine* is made to exclude evidence before the evidence is offered at trial, on grounds that would be sufficient to object to or move to strike the evidence. The purpose of a motion *in limine* is 'to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury.' [Citations.]" (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26 [61 Cal.Rptr.2d 518].)

The granting of respondent's motion in limine precluded appellants from proceeding on most of their causes of action. Based on the ruling, appellants informed the trial court that they had insufficient evidence to support the following causes of action: first (fraud and deceit); fourth (declaratory relief); fifth (accounting); seventh (breach of contingency fee agreement); eighth (breach of 50 percent partnership agreement); ninth (specific performance of contingency fee agreement); tenth (specific performance of 50 percent partnership agreement); eleventh (partnership dissolution, accounting, & appointment of receiver); twelfth (partition of proceeds from sale of the hotel); and thirteenth (imposition of constructive trust). Appellants, therefore, withdrew these causes of action while preserving their right to seek appellate review of the trial court's ruling.

Where, as here, the granting of a motion in limine disposes of one or more causes of action, it is the functional equivalent of the granting of a nonsuit as

---

[5] We do not consider a declaration from the jury foreperson showing how the jury calculated that Fergus's fee was $1.2 million. (See *Maxwell v. Powers* (1994) 22 Cal.App.4th 1596, 1604 [28 Cal.Rptr.2d 62] ["The juror affidavits submitted by Maxwell recited the reasoning process the jury employed during deliberations to arrive at its damages figures. . . . As such, the affidavits reflected the jurors' subjective mental processes and constitute inadmissible evidence to impeach a verdict."]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1683 [12 Cal.Rptr.2d 279] ["evidence about a jury's 'subjective *collective* mental process purporting to show *how* the verdict was reached' is inadmissible to impeach a jury verdict"].)

to those causes of action. In such circumstances, "we must view the evidence most favorably to appellants, resolving all presumptions, inferences and doubts in their favor, and uphold the judgment for respondent[] [on the applicable causes of action] only if it was required as a matter of law. [Citations.]" (*Edwards v. Centex Real Estate Corp., supra*, 53 Cal.App.4th at p. 28.)

### *Modification of Contingency Fee Agreement*

Appellants contend that the trial court erroneously excluded evidence of the September 2001 letter agreement between Fergus and respondent increasing the contingency fee from 45 to 50 percent and purporting to create a partnership. In the letter Fergus wrote, "All additional legal work from this time on will be done by me for an additional 5% contingency upon properties that we recover. . . . All other terms of the 1995 [original contingency fee] agreement are applicable . . . thus we are making a novation to our original agreement." Fergus agreed to "advance for a short period of time limited but substantial funds towards getting the hotel operational if the hotel is acquired through sheriff's sale and there is a need." Any funds so advanced "are to be paid back before either of us take [*sic*] any draws or income from the operation of the hotel and its rentals." Fergus stated that he and respondent would "in effect [be] 50%–50% partners." The letter agreement was not signed by respondent.

■ The unsigned September 2001 letter agreement could not transform the voidable original contingency fee agreement into a valid, binding, "50%–50%" partnership agreement. The letter agreement was in effect a 50 percent contingency fee agreement that was also voidable for failure to comply with Business and Professions Code section 6147. Section 6147 clearly requires that such an agreement be signed by the client and that it include "a statement that the fee is not set by law but is negotiable between attorney and client." (§ 6147, subd. (a)(4).) Thus, even if respondent had orally agreed to the terms of the letter agreement, that agreement would have been voidable at respondent's option. (§ 6147, subd. (b).) Respondent implicitly voided the letter agreement when he expressly voided the 1995 original contingency fee agreement.

The trial court, therefore, did not erroneously exclude evidence of the September 2001 letter agreement.[6]

---

[6] One of the trial court's reasons for excluding evidence of the September 2001 letter agreement was that it failed to comply with rule 3-300. Appellants concede that the letter agreement failed to so comply because it was not signed by respondent. However, appellants argue that the agreement was nevertheless enforceable because it was not the result of undue influence and hence did not constitute a violation of Fergus's fiduciary duties within the

*Ratification* ·

Appellants allege "that the [1995] Retainer Agreement does not conform to the requirements of Section 6147. Therefore, it can be made enforceable only if Appellants can demonstrate that the Retainer Agreement was ratified."

As a general rule, "[a] voidable contract may be ratified." (*Hanley v. Murphy* (1924) 70 Cal.App. 157, 165 [232 P. 767].) Civil Code section 1588 provides: "A contract which is voidable solely for want of due consent, may be ratified by a subsequent consent." Appellants contend that the evidence is sufficient to show a ratification by respondent of the 45 percent contingency fee agreement entered into in 1995. Therefore, appellants maintain, the trial court erroneously excluded evidence of the ratification. Respondent, on the other hand, argues that a contingency fee agreement that is voidable under Business and Professions Code section 6147 cannot be ratified. Respondent also argues that, as a matter of law, the evidence is insufficient to establish a ratification.

■ We need not determine whether the 1995 contingency fee agreement could have been ratified by respondent. Assuming that it could have been ratified, ratification would have required knowledge by respondent of his right to void the agreement. "[I]t is an inherent element of ratification that the party to be charged with it must have fully known what he was doing. . . . '[T]he very essence either of an election or ratification is that it is done advisedly, with full knowledge of the party's rights.' " (*Brown v. Rouse* (1894) 104 Cal. 672, 676 [38 P. 507], italics omitted.) No evidence was presented that respondent expressly or impliedly consented to the 1995 contingency fee agreement after learning of its voidability. Respondent declared under penalty of perjury that it was not until May 2004 that he learned that the contingency fee agreement was voidable, and that he voided the agreement on May 26, 2004.

■ In their opening brief, appellants do not contend that, before May 2004, respondent knew that the 1995 contingency fee agreement was voidable for failure to comply with Business and Professions Code section 6147. Instead, they contend that it may reasonably be inferred from the evidence that respondent knew "that contingent fees are negotiable." Such knowledge,

meaning of Probate Code section 16004. Appellants rely on *BGJ Associates v. Wilson* (2004) 113 Cal.App.4th 1217 [7 Cal.Rptr.3d 140]. They attempt to distinguish *Fletcher v. Davis* (2004) 33 Cal.4th 61 [14 Cal.Rptr.3d 58, 90 P.3d 1216], in which our Supreme Court held that, if a client grants an attorney a charging lien against the client's future judgment or recovery, the lien is unenforceable if the attorney has failed to comply with the requirements of rule 3-300. (*Fletcher*, at pp. 71–72.) Since we conclude that the September 2001 letter agreement was voidable under Business and Professions Code section .6147, subdivision (b), we need not resolve this issue.

as a matter of law, is insufficient to constitute a ratification rendering the contingent fee agreement enforceable by Fergus. Irrespective of whether the client has knowledge of the information required to be in the contingency fee agreement, the agreement is voidable if it fails to set forth that information in writing. (§ 6147.) Thus, even if it were undisputed that respondent knew that contingent fees are negotiable when he signed the 1995 contingency fee agreement, that agreement still would have been voidable.

In September and October 2002 respondent wrote letters to Fergus acknowledging that, pursuant to the 1995 contingency fee agreement, Fergus was entitled to a 45 percent share of the value of the hotel. But in these letters respondent did not acknowledge that the contingency fee agreement failed to comply with legal requirements. These letters, therefore, could not have constituted a ratification of the contingency fee agreement.

In their reply brief, appellants state: "As we demonstrated in our Opening Brief . . . , more than substantial evidence to contradict [respondent's] assertion [that he did not learn about his right to void the contingency fee agreement until May 2004] was presented at the [Evidence Code] Section 402 hearing [on respondent's motion in limine] . . . . Therefore, on the record, there is no question that ratification was an issue of fact to have been decided by the jury." We have reviewed the specified portions of appellants' opening brief. Those portions do not cite any evidence in the record from which a trier of fact could reasonably infer that, prior to May 2004, respondent knew that the 1995 contingency fee agreement was voidable.

Moreover, in their opposition to respondent's motion in limine filed in the trial court, appellants never argued that respondent knew prior to May 2004 that the 1995 contingency fee agreement was voidable. Instead, appellants argued that respondent "knew the fee was negotiable." "As a rule, parties are precluded from urging on appeal any points that were not raised before the trial court. [Citation.] To permit a party to raise a new theory is both unfair to the trial court and unjust to the opposing litigant. [Citation.]" (*In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1418 [42 Cal.Rptr.3d 325].)

Accordingly, the trial court did not err in excluding evidence of ratification.[7]

### Reasonable Attorney's Fee

Appellants contend that the trial court erred in refusing to instruct the jury that, in determining a reasonable fee, it could consider the contingent nature

---

[7] It is not clear whether appellants are also contending that there is sufficient evidence of a ratification of the September 2001 letter agreement increasing the contingency fee from 45 percent to 50 percent. If appellants are so contending, that contention is also without merit for the same reasons discussed herein.

of the fee arrangement between Fergus and respondent: "It is essential that the contingent nature of the engagement be included as a factor in setting a reasonable fee because that is the only manner by which to allow for the broad range of economic considerations that can be crucial to a reasonable outcome." Therefore, appellants, argue, Fergus's fee "may properly be based on a percentage of the recovery."

██ Business and Professions Code section 6147, subdivision (b), provides: "Failure to comply with any provision of this section renders the [contingency fee] agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." Where, as here, a client exercises his right to void a contingency fee agreement, section 6147 does not permit the trier of fact to consider the contingent nature of the fee arrangement in determining a reasonable fee. If the contingency fee agreement is void, there is no contingency fee arrangement. "A void contract is no contract at all; it binds no one and is a mere nullity. [Citation.] Consequently, such a contract cannot be enforced. [Citation.]" (*Guthman v. Moss* (1984) 150 Cal.App.3d 501, 507 [198 Cal.Rptr. 54].)

The deterrent and protective purposes of Business and Professions Code section 6147 would be impaired if an attorney who was barred from enforcing a contingency fee agreement would nevertheless be entitled to a percentage of the recovery based on the contingent risk factor. The attorney would in effect be receiving a contingency fee even though the contingency fee agreement had been voided by the client. A contingency fee "is contingent not only on the ultimate success of the case but also on the amount recovered; that is, the fee is measured as a percentage of the total recovery." (*Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 288 [256 Cal.Rptr. 209].)

*Wife's Claims*

Wife testified that, during a meeting with Fergus and respondent in November 2001, she had orally agreed to advance appellants' community property funds from a home equity loan for the purpose of operating and refurbishing the hotel until it was sold. Her agreement was based on the understanding that appellants "would be 50-50 partners [with respondent] in a venture" and "would be 50 percent owners of the hotel." Appellants' amended complaint alleged that, "in reliance upon the representations made by [respondent], [appellants] provided from November 28, 2001 more than $115,000 in funds for hotel operations, the purchase of almost all of the personal property used on and at the twenty-six room Pismo Beach Hotel premises, advanced costs of suit, and provided additional legal services which they would not otherwise have done."

The trial court excluded evidence of the oral partnership agreement involving wife. It concluded that "there is no way to adequately sever and separate the extent to which [wife] entered into a partnership agreement from the underlying unenforceable fee agreement entered into by her husband." The court stated that all of the agreements "relate to and arise out of the rendition of legal services in the first instance."

Wife contends that the trial court erroneously excluded evidence of the oral partnership agreement involving wife. She argues that, even if Fergus was not entitled to enforce that agreement because of violations of Business and Professions Code section 6147 and rule 3-300, she had an independent right to enforce respondent's "promise that the Ferguses would have an equal ownership interest in the hotel . . . ."

The contention is meritorious. Wife was not an attorney and was not bound by Business and Professions Code section 6147 or rule 3-300. She was innocent of any wrongdoing. No evidence suggests that she was aware of Fergus's failure to comply with legal requirements or that she, in any way, participated in a scheme to do an impermissible "end run" around section 6147 or rule 3-300. In reliance upon the partnership agreement, wife parted with valuable consideration: she put her home at risk to obtain funds to refurbish the hotel and render it operational so that it could be sold.[8]

■ As we have said before: "The purpose of the law of contracts is to protect the reasonable expectations of the parties." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 475 [47 Cal.Rptr.2d 12].) The trial court's ruling, in essence, extinguished her reasonable expectation and provided an unconscionable windfall to respondent. The facts here are compelling and the trial court's ruling was unsupported by any authority. Wife completely performed her end of the bargain and respondent did not. But he did accept the benefits of the bargain. "He who takes the benefit must bear the burden." (Civ. Code, § 3521.) We again emphasize that wife's decision to enter into this agreement was extremely risky. She could have been rendered homeless by the decision and she knew that further litigation with Bordan was foreseeable given his track record.

Respondent needed these funds because he "didn't have any moneys. He was broke." Respondent knew that, without wife's consent, the funds would

---

[8] In these circumstances, even though she was and is married to Fergus, she is treated as a third person, i.e., a stranger, in terms of her agreement with respondent. Surely the trial court would not have ruled that a nonspouse third party who wanted to participate in a risky hotel investment as a partner would be treated as having made a loan because a prior attorney-client contractual fee provision was voidable at the option of the client. Wife is an individual with individual rights. She should suffer no inability to enter into an enforceable contract on account of marriage.

not be forthcoming. Fergus testified that he had told respondent: " 'Subject to Sue's [wife's] agreement . . . I have a home equity loan that goes up to $240,000[.] . . . I will allow that to be used for the operation of the hotel and the purchase of the necessary assets [to outfit the hotel], if she agrees.' "

During the meeting with appellants in November 2001, respondent induced wife to agree to advance funds from the home equity loan. He did not dispute wife's understanding that appellants and respondent "would be 50-50 partners in a venture." Respondent told wife that they "would make buckets of money" and that the value of the hotel would be "between four and five million." Wife said to respondent, " 'Joe, what are you going to give me for this?' " Respondent replied, " 'I'll sign any documents that you ask me to sign.' " Fergus testified that wife "was looking for a document that would secure her interest."

*BGJ Associates v. Wilson, supra*, 113 Cal.App.4th 1217, is distinguishable. In *BGJ Associates* an attorney, Janger, his client, Brittan, and a third party, Goldman, entered into an oral joint venture agreement to acquire real property. Janger failed to satisfy the requirements of rule 3-300. The appellate court concluded that the agreement was voidable by Brittan because the "agreement was the result of undue influence and hence was a violation of the [attorney's] fiduciary duties within the meaning of Probate Code section 16004." (*BGJ Associates, supra*, at p. 1229.) Goldman argued "that even if the agreement cannot be enforced by Janger, he should be permitted to pursue his tort claims against Brittan because he is innocent of any wrongdoing." (*Id.*, at p. 1231.) The appellate court rejected this argument. It reasoned, "The problem is that any rights Goldman seeks to assert arise from the . . . joint venture, which was the product of undue influence and therefore voidable by Brittan." (*Ibid.*) In addition, the court observed that "Goldman had notice that he and Janger were seeking to engage in a transaction with Janger's client, and notice of the fairness (or unfairness) of the terms of that agreement. The unfairness in the alleged agreement favored Goldman as well as Janger, and for that reason, Goldman's rights against Brittan are not severable from Janger's." (*Id.*, at p. 1231.)

Here, in contrast to *BGJ Associates*, no evidence was presented that the oral partnership agreement involving wife was the product of undue influence. Wife did not induce respondent to enter into the agreement. Rather, it was respondent who induced wife by promising her that they "would make buckets of money" and that he would sign any documents necessary to formalize their agreement.

Nor was any evidence presented that the terms of the oral partnership agreement involving wife were unfair to respondent. The agreement provided

respondent with the funds he needed to refurbish the hotel and render it operational so that it could be sold. Through wife's financial assistance pursuant to the oral partnership agreement, respondent was able to sell the hotel for $4.8 million. In these circumstances, wife's rights were severable from her husband's.

The granting of respondent's motion in limine was the functional equivalent of the granting of a nonsuit as to wife's causes of action based on that agreement. These causes of action are as follows: first (fraud and deceit); fourth (declaratory relief); fifth (accounting); eighth (breach of 50 percent partnership agreement); tenth (specific performance of 50 per cent partnership agreement); eleventh (partnership dissolution, accounting, & appointment of receiver); twelfth (partition of proceeds from sale of the hotel); and thirteenth (imposition of constructive trust).

The trial court erred in granting the motion in limine insofar as it sought the exclusion of evidence concerning the partnership agreement involving wife. Wife's causes of action based on that agreement must be reinstated, and she is entitled to a trial on these causes of action. If on remand the jury returns a verdict in favor of wife as to any of the reinstated causes of action, she shall not be permitted to have a double recovery. Pursuant to the oral partnership agreement appellants would be entitled to half of the $4.8 million received by respondent for the sale of the hotel. This half-share ($2.4 million) would include compensation for Fergus's legal services. Since the jury awarded Fergus reasonable attorney's fees of $1.2 million and that award stands as a final judicial determination, appellants would be unjustly enriched if wife were to be awarded more than an additional $1.2 million on the reinstated causes of action.

## RESPONDENT'S CROSS-APPEAL

### *Sale Price of Hotel*

We reject respondent's contention that the trial court abused its discretion in admitting evidence that the hotel was sold for $4.8 million. The $4.8 million recovery resulted from Fergus's efforts. The amount involved and the result obtained are proper factors to be considered in determining a reasonable hourly rate. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1139 [104 Cal.Rptr.2d 377, 17 P.3d 735] ["the ' "reasonable hourly rate . . . is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, *the amount to be obtained in the litigation*, the attorney's reputation, and the undesirability of the case" ' " (italics added)]; *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792 [100 Cal.Rptr. 385, 494 P.2d 9] ["one of the significant factors in determining the reasonableness of an attorney's fee is

'the amount involved and the result obtained' "]; *Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152, 168 [61 Cal.Rptr.2d 715].)

### Contingency Fee Arrangement

Respondent contends that the trial court abused its discretion in admitting evidence that Fergus was working under a contingency fee arrangement. This contention is without merit. The contingency fee arrangement was admissible to explain why Fergus had not kept records of all of the hours he had worked on the case.

### Ethical Rules

Respondent contends that the trial court abused its discretion in excluding evidence that the contingency fee agreement and modification of that agreement violated "the very 'ethical codes and rules of practice' that exist to protect Respondent from precisely the kinds of illegal claims Appellants were asking the jury to enforce."

The trial court did not abuse its discretion. Whether the agreement and modification violated " 'ethical codes and rules of practice' " had no bearing on the determination of the reasonable value of Fergus's services. Furthermore, Fergus was not asking the jury to enforce an illegal claim. Because respondent had exercised his right to void the contingency fee agreement, Fergus's claim for reasonable attorney's fees was authorized under Business and Professions Code section 6147, subdivision (b).

### Denial of Motion for a New Trial

Respondent contends that the trial court abused its discretion in denying his motion for a new trial on the cross-complaint's claim that Fergus had committed malpractice. In its special verdict, the jury found that Fergus had not committed any malpractice that had harmed respondent. Respondent asserts that Fergus "committed malpractice when he failed to provide the Sheriff with an accurate legal description to be used at the Sheriff's sale of the Hotel." Respondent claims that, pursuant to section 657, subdivision 5, a new trial is warranted "based upon inadequacy of the jury's damages award ($0)."

"In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and

exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].)

Respondent has failed to establish that Fergus committed malpractice. An expert witness, Bruce Hogan, testified that "the property description was correct" and that Fergus had "acted appropriately." Even if Fergus had made a mistake in the legal description of the hotel, respondent has failed to refer us to testimony establishing that Fergus's performance fell below the standard of care and skill of members of his profession. (See *Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 647–648 [172 Cal.Rptr. 254] [unless "failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony," expert testimony is required "on the standard of care and the attorney's performance in relation to that standard"].) Moreover, respondent did not indicate the amount of his loss or damage from the alleged malpractice. The jury and the trial court were both of the view that respondent was not harmed but was in fact helped by Fergus. We must agree. We cannot say that the trial court abused its discretion in denying the motion for a new trial "based upon inadequacy of the jury's damages award ($0)." " 'The burden of affirmatively demonstrating error is on the appellant. This is a general principle of appellate practice as well as an ingredient of the constitutional doctrine of reversible error.' [Citation.] The order of the lower court is ' "presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." ' [Citation.]" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256].)

*Disposition*

The order granting a new trial on the issue of damages is reversed and the original $1.2 million judgment is reinstated. Wife's causes of action relating to the oral partnership agreement involving her are also reinstated. The reinstated causes of action are as follows: first (fraud and deceit); fourth (declaratory relief); fifth (accounting); eighth (breach of 50 percent partnership agreement); tenth (specific performance of 50 percent partnership agreement); eleventh (partnership dissolution, accounting, and appointment of receiver); twelfth (partition of proceeds from sale of the hotel); and thirteenth (imposition of constructive trust). The matter is remanded to the trial court for a trial on the reinstated causes of action pursuant to the views expressed in this opinion. Wife's recovery, if any, on the reinstated causes of action shall not exceed an

additional $1.2 million. In all other respects, the original judgment on the jury verdict is affirmed. Appellants shall recover their costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied June 1, 2007, and the opinion was modified to read as printed above. The petition of appellant Joseph A. Songer for review by the Supreme Court was denied July 25, 2007, S153444. Werdegar, J., did not participate therein.

# APPENDIX

001997

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

DATE: April 6, 2005 DEPARTMENT NO. 8

PRESENT: HON. MARTIN J. TANGEMAN, JUDGE Sean Gallagher/Wendy Knight, DEPUTY CLERK

Todd Steeb, BAILIFF Carolyn Bronkar, REPORTER

| TITLE | COUNSEL |
|---|---|
| SUE FERGUS, | Roy Ogden |
| PLAINTIFF(S) | |
| VS. | |
| JOSEPH SONGER, | Dennis Law |
| DEFENDANT(S) | |

ACTION NO.: CV030514

PROCEEDINGS: MOT/JUDGMENT NOTWITHSTANDING & MOTION FOR NEW TRIAL

Counsel is present as indicated above.

The Court sustains Defendant's objections #1 through 3 and #5 through 7.

The Court overrules Defendant's objections #4 and 8.

Plaintiffs' Request for Judicial Notice dated April 5, 2005 is granted.

The Court denies the request for remittitur.

The motion for new trial is granted as to the issue of the amount of Plaintiffs' damages only. The motion for new trial is denied as to the issue of malpractice.

The motion for judgment notwithstanding the verdict is denied.

Defendant shall prepare the order and submit to the Court with approval as to form.

Case Management Conference is hereby set for April 21, 2005 at 9:00 a.m. in Department 8.

Notice is waived.

APPENDIX A