[No. B194917. Second Dist., Div. Eight. Feb. 22, 2008.]

JAMES T. STROUD et al., Plaintiffs and Appellants, v. DOMINICK A. TUNZI, Defendant and Respondent.

## Counsel

Stroud & Do and James T. Stroud for Plaintiffs and Appellants.

Law Offices of Mark C. Sherwood and Mark C. Sherwood for Defendant and Respondent.

## Opinion

**RUBIN, J.**—James T. Stroud, Van T. Do, and their law firm Stroud & Do, appeal from the trial court's order compelling them to release funds they wrongfully withheld from their former client, Dominick A. Tunzi, in their attempt to recover their attorney's fees. We affirm.

## FACTS AND PROCEEDINGS

Respondent Dominick A. Tunzi sued his former employer and hired appellants James T. Stroud and Van T. Do to represent him in his lawsuit. In November 2002, he signed a contingency fee agreement with appellants, paying them a flat fee of $75,000 if the lawsuit settled before trial and 40 percent of any recovery if the matter went to trial. Before going to trial, he settled his lawsuit for $600,000.

After Tunzi settled his lawsuit, appellants demanded he pay them a 50 percent contingency fee of $300,000. Although appellants' original contingency fee agreement with Tunzi entitled them to a flat fee of only $75,000 if Tunzi's case did not go to trial, they claimed he had agreed before the settlement to modify their contingency fee agreement. The first purported modification was a handwritten, one-page document dated April 2, 2004. Signed by Tunzi, it stated: "I, Dominick A. Tunzi, promise to pay the law firm Stroud & Do $75,000 out of my $450,000 portion of the settlement, should my case settle for that amount. I understand that this is contingent upon Stroud & Do being paid directly . . . [$225,000 from another entity], which brings Stroud & Do's attorney's fee[s] to the total of $300,000." Four days later, Tunzi signed another handwritten document that stated: "I, Dominick Tunzi, agree to pay Stroud & Do $300,000 out of my settlement of

$600,000 . . . ." In addition to signing the two handwritten documents, Tunzi also signed a client settlement sheet prepared by appellants itemizing the anticipated distribution of the settlement proceeds, including the proposed $300,000 payment demanded by appellants.

When Tunzi refused to pay appellants more than the $75,000 he promised them under the original agreement for a pretrial settlement, the matter went to arbitration. The arbitrator found for Tunzi and rejected appellants' claim for a larger fee. Instead of accepting the arbitrator's finding, appellants sued Tunzi to recover the $300,000 they demanded. Their complaint alleged several causes of action, including breach of contract, and sought a declaratory judgment that they were entitled to recover $300,000 from Tunzi's settlement proceeds.

Appellants moved for summary adjudication of their cause of action for breach of contract. They argued the two handwritten documents from April 2004 modified the original contingency fee agreement from November 2002 and entitled them to $300,000. Tunzi opposed summary adjudication, arguing the April documents were ineffective in modifying the original contingency fee agreement because they did not comply with statutory requirements in the Business and Professions Code governing contingency fee agreements between an attorney and client.

The court denied summary adjudication. It informed the parties that appellants' motion had skirted the key issue of whether enforceability of the April 2004 modifications depended on the modifications' compliance with the Business and Professions Code. After the court shared its thoughts, counsel and the court conferred in chambers and agreed to set a hearing on the validity of the April modifications. The minute order from the hearing stated: "Court and counsel confer in chambers. [¶] Counsel agree that the main issue in this case is the validity of the contract. [¶] The Court sets a formal hearing, with the agreement of counsel for 9-25-06 at 8:30 a.m. in this department[.] Counsel will brief the issue in accordance with the CCP. In essence the hearing will be a summary judgment as to the validity of the contract. [¶] As to the hearing notice [is] waived."

In preparation for the summary judgment hearing, the parties submitted points and authorities that supplemented the papers the parties filed for the earlier motion for summary adjudication. Tunzi's papers argued the April documents were ineffective attempts to modify the original fee agreement because they did not comply with the Business and Professions Code

requirements that certain disclosures be made in contingency fee agreements. Appellants argued, on the other hand, that such modifications need not comply with the Business and Professions Code because the original contingency fee agreement did so. Appellants also argued in the alternative that the April modifications replaced the November fee agreement and without them no agreement existed, meaning they were entitled under quantum meruit to a reasonable fee of $400,000 for their services.

At the hearing, the court found the April modifications were invalid because they did not comply with section 6147 of the Business and Professions Code governing contingency fee agreements. It further found the original November contingency fee agreement governed appellants' fees. The court observed that in light of its ruling that the November fee agreement controlled, it did not "know what this litigation is all about" and urged the parties to meet and confer.

After the hearing, Tunzi submitted a proposed order to the court to reflect its rulings. On October 23, 2006, the court signed the order. The order stated the purported April modifications were invalid and the November fee agreement governed. Ruling in favor of Tunzi on appellants' cause of action for declaratory relief, the court ordered appellants "to immediately release all previously disputed funds held in Trust" to Tunzi. Appellants appeal from the court's order.

## DISCUSSION

### 1. *April Modifications Ineffective*

■ The trial court found the purported modifications from April 2004 were ineffective because they did not comply with Business and Professions Code section 6147 (section 6147). That statute imposes several preconditions on the enforceability of a contingency fee agreement. First, both the attorney and client must sign the agreement. Second, the agreement must state the contingency fee rate, and address how costs affect the attorney's fees and the client's recovery. And finally, the agreement must state that the attorney's fees are negotiable and not set by law. (§ 6147, subd. (a)(1)–(4).)[1] If a

---

[1] More fully, section 6147 states: "(a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following: [¶] (1) A statement of the contingency fee rate that the client and attorney have agreed upon. [¶] (2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery. [¶] (3) A statement as to what

contingency fee agreement does not comply with these requirements, the agreement is voidable at the client's election. (§ 6147, subd. (b).)

■ The April documents did not comply with section 6147. First of all, Appellants did not sign the documents. In addition, the documents did not state the contingency rate and did not discuss costs. And finally, they did not disclose that appellants' fees were negotiable and not established by law.[2]

Appellants contend the April documents did not need to comply with section 6147 because the original November contingency fee agreement did. The recent decision in *Fergus v. Songer* (2007) 150 Cal.App.4th 552 [59 Cal.Rptr.3d 273] (*Fergus*) held otherwise. In that decision, a letter agreement between an attorney and client purported to increase the attorney's contingency fee from 45 percent to 50 percent. The *Fergus* court refused, however, to enforce the agreement because it did not comply with section 6147. It explained that the "letter agreement was in effect a 50 percent contingency fee agreement that was also voidable for failure to comply with [section 6147]."[3] (*Fergus*, at p. 570; accord, *Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th 1345, 1351, 1353–1354 [122 Cal.Rptr.2d 193] (*Mitchell*) [modifications to credit service contract must comply with Credit Services Act of 1984 (Credit Services Act) (Civ. Code, § 1789.10 et seq.) even though original service contract adhered to the act's provisions].) Following *Fergus*, the trial court did not err in finding the purported April modifications did not change the November agreement.

In *Mitchell* the First District reached a similar outcome involving another consumer protection statute, the Credit Services Act. (Civ. Code, § 1789.10

---

extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney. [¶] (4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client."

[2] The trial court also found inconsistencies between the November agreement's treatment of costs and how the purported modifications dealt with costs as reinforcing its conclusion that the April modifications were invalid. For example, the November agreement made Tunzi fully responsible for all costs, including reimbursing appellants for any costs they advanced, before calculating the contingency fee amount. The April 6 agreement, however, did not address costs in awarding $300,000 to appellants.

[3] Although the *Fergus* court also found the underlying agreement for a 45 percent contingency invalid because it did not comply with section 6147, the invalidity of the letter agreement did not depend on the underlying agreement's invalidity. (*Fergus, supra*, 150 Cal.App.4th at pp. 558–560.)

et seq.) As in this case, the defendant in *Mitchell* argued only the original contract must comply with the signature provisions governing credit service agreements. Thus, the defendant asserted, modifications to the original contract did not require the consumer's signature. The *Mitchell* court rejected the argument. It noted the act's signature requirements applied to "[e]very contract" under its provisions. (Civ. Code, § 1789.16.) Reasoning that material modifications to a contract produced in essence a new contract, the *Mitchell* court held that such modifications fell within the meaning of "every contract." (*Mitchell, supra*, 99 Cal.App.4th at pp. 1353–1354.) Hence, such modifications required the consumer's signature to be valid.

Here, in contrast, the provisions of section 6147 apply "at the time the contract is entered into." (§ 6147, subd. (a).) Appellants contend such language is narrower than "every contract," meaning the requirements of section 6147 apply only to the original contingency fee agreement. We disagree. First, as a matter of statutory construction, we see little difference between the two provisions. If an amendment essentially creates a new "contract" according to *Mitchell*, it follows that an amendment is a contract "entered into" under section 6147. We also reject appellant's constricted interpretation of section 6147's scope for more fundamental reasons of public policy: it would too easily allow an attorney to frustrate the statute's purpose. Sounding a caution that extends beyond credit services to cover all manner of consumer affairs, including legal services, the *Mitchell* court envisioned the hazard of not requiring compliance with notice and signature provisions for material changes to a contract. It stated: "[I]f we were to choose the more restrictive interpretation put forward by defendants and exclude contracts as modified from the reach of the CSA, we would seriously undermine the Legislature's purpose: an unscrupulous provider of credit services could overcome the protections of this act simply by obtaining a buyer's signed assent to one set of terms for the initial purchase of credit services and later modifying any of those terms by employing [a] . . . procedure similar to the one used here" that did not adhere to the Credit Services Act's consumer protection requirements. (*Mitchell, supra*, 99 Cal.App.4th at p. 1354.) Hearing *Mitchell*'s call (without implying any bad motives to appellants), we conclude that material changes to a contingency fee agreement must comply with section 6147.

Appellants contend Tunzi may not dispute the validity of the April modifications because, according to appellants, he made judicial admissions that the modifications were valid. In support of their contention, appellants rely particularly on the general denial in Tunzi's unverified answer to appellants' verified complaint. They argue a general denial—instead of

specific denials of each allegation in their complaint—constitutes a judicial admission of their complaint's allegations. In support, appellants cite *Hutson v. Gerson* (1933) 132 Cal.App. 665 [23 P.2d 816] (*Hutson*), a case from three-quarters of a century ago that relied on a statute since repealed. (Code Civ. Proc., former § 437, reenacted in substantially different form at Code Civ. Proc., § 431.30; see Historical Note, Deering's Ann. Code Civ. Proc. (1995 ed.) foll. § 437, p. 298.) *Hutson* stood for the proposition that facts alleged in a complaint that the defendant does not dispute are deemed admitted. (*Hutson, supra*, at p. 669.)

■   Apart from its reliance on a repealed statute (and the failure by any published decision since before the Second World War to cite the decision), *Hutson* does not help appellants because judicial admissions involve facts, not legal theories or conclusions. (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 [127 Cal.Rptr.2d 436]; see also *Walker v. Dorn* (1966) 240 Cal.App.2d 118, 120 [49 Cal.Rptr. 362] [party may assert inconsistent defenses but not inconsistent facts]; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151] [one may not contradict facts asserted in one's pleadings].) This case turns on the legal consequence of largely undisputed facts. Tunzi does not deny signing the April agreements; he denies their validity. Legal conclusions and assertions involving a mixed question of law and fact are not the stuff of judicial admissions. (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324 [53 Cal.Rptr.3d 494].) Hence, appellants cannot take from Tunzi's general denial of appellants' complaint his supposed judicial admissions of the complaint's allegations as they pertain to the applicability of section 6147.

Appellants also contend Tunzi admitted no dispute existed over their fees. In support, they cite a hearing from the underlying litigation between Tunzi and his employer on an order to show cause regarding the settlement of that litigation. The court trying the underlying litigation issued its order to show cause when Tunzi refused to sign the settlement agreement. The employer's counsel told the court he believed Tunzi was refusing to sign the settlement because "there's a dispute regarding the fees, which [the employer was] not involved with." Appellants—who at that time were still representing Tunzi as counsel of record although Tunzi had hired new counsel—stated they did not know why he would not sign the settlement. At that point, Tunzi told the court, "I want to clarify one thing. [¶] There is no issue on the fees. [¶] It may be—it may have been perceived as that, but there is no issue . . . ." The

court cautioned Tunzi against speaking further without his new counsel present, at which moment Tunzi's new attorney entered the courtroom and the discussion turned to whether the proposed written settlement accurately stated the settlement's terms.

An unclear or equivocal statement does not create a binding judicial admission. (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48 [43 Cal.Rptr.3d 874]; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735].) During the hearing on the order to show cause, the parties were debating the reasons Tunzi was refusing to sign the settlement. Tunzi said fees were not an "issue"—by which he apparently meant they were not the reason for his refusal. From that comment one cannot draw a judicial admission that Tunzi agreed appellants were entitled to $300,000 in fees, particularly when he made his comment before appellants had sued him for those fees.

Appellants finally contend that if we find the April modifications are invalid, we must necessarily find the November agreement is not binding, thereby entitling them to reasonable fees under quantum meruit (§ 6147, subd. (b)). Appellants' contention fails because they cite no authority that invalid modifications to a contract nullify the contract. (Cf. *Travelers Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7, 17 [64 Cal.Rptr. 440, 434 P.2d 992], disapproved on another point in *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432] [alteration of one detail of contract is a modification, not a rescission, and leaves rest of contract undisturbed].)

### 2. *No Due Process Violation*

Appellants filed an ex parte application to enjoin enforcement of the court's October 23 order to release funds to Tunzi. Simultaneously with seeking to enjoin enforcement of the order, appellants also filed a motion under Code of Civil Procedure section 170.1 to disqualify the trial judge. In their ex parte application, they asserted they had not received notice of the court's ruling and order. On appeal, they contend Tunzi's counsel fraudulently procured the court's order in violation of their right to due process. They claim Tunzi's counsel "simply made up a court order, submitted a fraudulent proof of service to the trial court, and the trial court signed the order." They allege he did so without notice, and they complain "It is unclear why the court signed an order it had never made, but in taking such action

the court erred by abusing its discretion and by acting in violation of due process." The court stated it was prepared to stay its October 23 order, but lacked jurisdiction to do so while the disqualification motion was pending. Appellants declined to withdraw their disqualification motion and the court did not stay its order.

Appellants contend the October 23 order violated their right to due process. We disagree because the record does not support their assertions. Appellants had notice of and participated in the September hearing from which the October 23 order issued. In its minute order setting the September hearing, the court stated: "Counsel agree that the main issue in this case is the validity of the contract. [¶] The Court sets a formal hearing, with the agreement of counsel for 9-25-06 at 8:30 a.m. in this department[.] Counsel will brief the issue in accordance with the CCP. In essence the hearing will be a summary judgment as to the validity of the contract." After the hearing, the court found the November fee agreement was valid and the April modifications ineffective. The October 23 order logically flowed from those findings: It ordered appellants to release to Tunzi the settlement funds they held in excess of their $75,000 fee under the November fee agreement.

The record does not support appellants' claim that the court misunderstood what it was signing when it issued the October 23 order. Appellants assert they repeatedly pointed out to the court the fraud lying somehow in the October 23 order, but that assertion cuts against appellants. For if appellants repeatedly warned the court of its supposed misreading of the October 23 order and the court nevertheless stood by the order, then the court presumably disagreed with appellants' assertion that the order was inaccurate. Finally, the validity of the October 23 order is not affected by the subsequent disqualification motion, the disposition of which is not before us. (Code Civ. Proc., § 170.3, subd. (b)(4).)

Finally, appellants ask us to refer Tunzi's counsel to the State Bar for committing a fraud upon the court. We see no basis for a referral. First, any alleged misconduct involving the October 23 order occurred before the trial court, not before us. Second, and more tellingly, appellants themselves have already filed two complaints about Tunzi's counsel with the State Bar, and the State Bar has rejected both complaints. We will let the State Bar's disposition of appellants' complaints speak for itself.

## DISPOSITION

The October 23, 2006 order to release funds to respondent Dominick Tunzi is affirmed. Respondent to recover his costs on appeal.

Cooper, P. J., and Egerton, J.,* concurred.

A petition for a rehearing was denied March 24, 2008, and appellants' petition for review by the Supreme Court was denied June 11, 2008, S162784.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.