Filed 1/6/15  Tatum v. Litton Loan Servicing CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TATUM TATUM,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LITTON LOAN SERVICING LP et al.,<br><br>Defendants and Respondents. | B248732<br><br>(Los Angeles County<br>Super. Ct. No. BC449409) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Fruin, Jr., Judge.  Affirmed.

Law Offices of Charles O. Agege and Charles O. Agege, for Plaintiff and Appellant Tatum Tatum.

Houser & Allison, Eric D. Houser and Joshua D. Watts, for Defendants and Respondents Litton Loan Servicing LP; Mortgage Electronic Registrations Systems, Inc; The Bank of New York Mellon f/k/a The Bank of New York, as Trustee under the Pooling and Servicing Agreement Dated as of June 1, 2003 Alternative Loan Trust 2003-13T 1, Mortgage Pass-Through Certificates, Series 2003-31.

_____

Tatum Tatum appeals from the judgment entered in this wrongful foreclosure action after the trial court granted summary judgment in favor of Litton Loan Servicing

LP, Mortgage Electronic Registration Systems, Inc. (MERS) and Bank of New York Mellon (collectively, the Bank defendants). Tatum contends the trial court improperly considered defective and inadmissible declarations submitted by the Bank defendants in connection with their motion. In addition, Tatum argues, even if the Bank defendants' declarations were admissible and satisfied their burden on summary judgment, he raised a triable issue of material fact as to whether Bank of New York Mellon had a beneficial interest in his property at the time it purported to initiate foreclosure proceedings and sell his property at a trustee's sale. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Tatum's Loan on the Property and Default*

On May 23, 2003 Tatum obtained a loan to refinance real property located at 2062-2064 North Sycamore Avenue in Los Angeles. He executed a promissory note in the amount of $650,000, which was secured by a deed of trust on the property. The deed of trust identified Countrywide Home Loans, Inc. as the lender, MERS as both the beneficiary and the nominee for the lender, its successors and assigns, and CTC Real Estate Services as the trustee. Under the terms of the note, Tatum was required to make monthly payments over a 30-year period at a fixed interest rate of 6.25 percent and to pay the debt in full no later than June 1, 2033.

In June 2003 Tatum's loan, along with several other loans, was securitized into asset-backed certificates, deposited in a trust in accordance with a pooling and services agreement dated June 1, 2003 (PSA) and sold to Bank of New York Mellon, formerly known as Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc. Asset Backed Certificates Series 2003-13T1 (the BNY securitized trust.)[1]

---

[1] The process of "securitizing a loan" was succinctly explained in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082, fn. 1: "Mortgage-backed securities are created through a complex process known as 'securitization.' (See Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13 ['a mortgage securitization transaction is extremely complex . . .'].) In simplified terms, 'securitization' is the process where (1) many loans are bundled together and transferred to a passive entity such as a trust, and (2) the trust holds the loans and issues investment securities that are

In February 2009 Tatum stopped making payments on the loan. In June 2009 Litton began servicing Tatum's loan; Tatum continued to be in default. On October 29, 2009 First American Loanstar Trustee Services, LLC, acting as "agent for the current beneficiary" on Tatum's deed of trust, recorded a notice of default, which was served on Tatum in November 2009.

2. *The Trustee's Sale of the Property*

On November 10, 2009 Bank of New York Mellon, as trustee for the BNY securitized trust, replaced CTC Real Estate Services as trustee of Tatum's deed of trust with First American Loanstar Trustee Services. A copy of the substitution of trustee was served on Tatum on December 1, 2009 and recorded on December 7, 2009.

On January 30, 2010 First American issued a notice of trustee's sale announcing a foreclosure sale would take place on February 22, 2010. A copy of the notice of trustee's sale was mailed to Tatum on January 29, 2010, posted on the property on February 2, 2010, published in a newspaper of general circulation for three consecutive weeks beginning February 1, 2010 and recorded on February 1, 2010.

On February 22, 2010 the property was sold at a nonjudicial foreclosure sale to Bank of New York Mellon as trustee for the BNY securitized trust for $662,536.54, the amount of the indebtedness.

3. *Tatum's Complaint and the Bank Defendants' Demurrer*

On November 12, 2010 Tatum sued the Bank defendants. In his operative third amended complaint asserting wrongful foreclosure and related claims,[2] Tatum alleged Bank of New York Mellon had no beneficial interest in the property until MERS, as nominee for Countrywide, formally assigned Tatum's deed of trust to it on February 2, 2010. Thus, it had no authority on November 30, 2009 to substitute First American as

repaid from the mortgage payments made on the loans. [Citation.] Hence, the securities issued by the trust are 'mortgage-backed.'"

[2] In addition to wrongful foreclosure, Tatum alleged causes of action for breach of contract, fraud and unfair or unlawful business practices (Bus. & Prof. Code, § 17200).

3

the trustee; and First American had no authority on January 30, 2010 to record a notice of trustee's sale. Tatum alleged the statutory requirements for a nonjudicial foreclosure sale had not been satisfied and, consequently, the sale of the property was wrongful and should be set aside.

The Bank defendants demurred to the third amended complaint on the ground it failed to state a cause of action. They argued MERS, on behalf of Countrywide, had assigned all beneficial interest in the deed of trust to Bank of New York Mellon, as trustee for the BNY securitized trust, on October 23, 2009, well in advance of the bank's November 30, 2009 substitution of the trustee on the trust deed. The Bank defendants attached to their demurrer a copy of the assignment of the deed of trust filed with the Los Angeles County Recorder's Office and requested the court take judicial notice of it. The recorded assignment included two date stamps: One stamp issued by the Los Angeles County Recorders' Office reflected a recording date of February 10, 2010. The other stamp read "Effective Date" and had a blank line on which the date "10-23-09" had been handwritten. The assignment also contained a notary stamp indicating the MERS employee had signed it on behalf of MERS on February 2, 2010.

Tatum argued in his opposition to the demurrer the assignment of the deed of trust had been "backdated" to make it appear the deed of trust had been assigned on October 23, 2009, but, as indicated by the notary stamp, it was not actually assigned until February 2, 2010.

The trial court overruled the demurrer, concluding the effective date of the assignment of the deed of trust from MERS (as nominee for Countrywide) to Bank of New York Mellon, as trustee for the BNY securitized trust, was uncertain; and thus Tatum could state a claim that the foreclosure was conducted by the wrong party and was therefore unlawful.

4

4. *The Bank Defendants' Motion for Summary Judgment*

a. *The motion and supporting papers*

On November 13, 2012 the Bank defendants filed a motion for summary judgment or, in the alternative, summary adjudication. Taking a different position from the one they argued on demurrer, the Bank defendants contended the date of the formal assignment of the deed of trust was immaterial. By transferring Tatum's secured loan to the securitized trust no later than June 30, 2003 pursuant to the terms of the PSA, Countrywide necessarily also transferred the security for the loan as a matter of law pursuant to Civil Code section 2936 ("assignment of a debt secured by a mortgage carries with it the security") without any need for a formal assignment. In support of this position, they included declarations from Don Ventura, a senior associate and custodian of records at Bank of New York Mellon; Kevin Flannigan, a vice president and custodian of loan records at Litton Loan Servicing; and DeeAnn Gregory, a senior manager and custodian of records at First American, authenticating the negotiable instruments and other documents in the possession of their respective companies.

Flannigan and Ventura each testified that Tatum's loan, among several others, had been securitized and transferred to the BNY securitized trust effective June 30, 2003, pursuant to the terms of the PSA. The PSA expressly provided for the transfer of "all right, title and interest" in the loans deposited into the trust to Bank of New York Mellon, as trustee for the certificate holders. It also provided, for each note transferred, Countrywide would deliver to Bank of New York Mellon the original note "endorsed by manual or facsimile signature in blank." In addition, "in connection with the assignment of any loan," Countrywide agreed "that it will cause, at the Trustee's expense, the MERS System to indicate that such Mortgage Loans have been assigned by the Seller to the Trustee in accordance with this agreement . . . for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS System to identify the series of the Certificates issued in connection with such Mortgage Loans." Flannigan and Ventura included with their declarations "true and

5

correct" copies of Tatum's indorsed promissory note delivered to Bank of New York Mellon,[3] the PSA governing the securitization of the BNY securitized trust, the deed of trust and a mortgage loan schedule specifically listing Tatum's loan among several loans deposited in the BNY securitized trust as of June 30, 2003.

Gregory's declaration similarly authenticated the records in First American's files, including the October 29, 2009 notice of default, the recorded notice of substitution of trustee, the notice of trustee's sale and the recorded assignment of the deed of trust. She also attached to her declaration a copy of the promissory note, which contained a stamp indicating it was a "true and correct copy of the original note." It did not contain a blank indorsement.

b. *The notice of errata with "corrected" declarations*

On December 20, 2012, well before Tatum filed his opposition to the Bank defendants' summary judgment/summary adjudication motion, the Bank defendants filed a notice of errata in connection with their motion. The original declarations, they acknowledged, were procedurally defective. Ventura and Flannigan's declarations, executed in Texas, stated they were made under Texas law, not California law; and all three declarations failed to state they were made under penalty of perjury in violation of Code of Civil Procedure section 2015.5. The Bank defendants attached to their notice of errata corrected declarations that were substantively identical to the originals except that each stated it was made under penalty of perjury under the laws of the State of California. The Bank defendants explained in their notice of errata that the omissions and reference to Texas law were unintentional and inadvertent.[4]

---

3   The indorsement stamp read, "Pay To The Order Of ____ Without Recourse, Countrywide Home Loans, Inc.," and was signed by a Countrywide executive.

4   The Bank defendants also served corrected declarations on Tatum on December 5, 2012 in connection with a separate motion to expunge lis pendens.

6

c. *Tatum's opposition papers*

Tatum filed his opposition papers on March 4, 2013.[5] Tatum argued, as he had in opposition to the Bank defendant's demurrer, Bank of New York Mellon did not obtain any beneficial interest in the property until February 2, 2012; at the very least, he asserted, the uncertainty as to the effective date of the assignment of the deed of trust precluded summary judgment. In addition, Tatum argued there was a triable issue of material fact whether Bank of New York Mellon had acquired the note in June 2003, citing Ventura's deposition testimony that he did not know which entity, Countrywide or Bank of New York Mellon, owned the note or deed of trust as of February 21, 2013, the date of his deposition. He also supported this argument by pointing to the lack of a blank indorsement on the copy of the note attached to Gregory's declaration. Finally, Tatum argued the declarations submitted with the original motion were procedurally defective; he did not address the corrected declarations.

d. *The Bank defendants' reply papers*

On March 11, 2013 the Bank defendants filed their reply in support of their motion. They argued Tatum had failed to raise any triable issue of material fact contradicting their evidence that Tatum's loan was securitized and transferred to Bank of New York Mellon, as trustee of the BNY securitized trust, as of June 30, 2003. They also submitted the deposition testimony of Gina Johnson, a senior loan analyst at the company that succeeded Litton in servicing Tatum's loan. Johnson explained indorsements are normally placed on the promissory notes only when they are sold; thus the original note signed by Tatum, a copy of which was attached to Gregory's declaration, would not have included an indorsement stamp.

---

5    Prior to filing his opposition papers, Tatum twice filed ex parte applications requesting the hearing on the motion for summary judgment/summary adjudication be continued to permit him to take several depositions. The court granted both requests, continuing the hearing from its initially scheduled date of January 24, 2012 to February 28, 2013 and then again to March 15, 2013.

5. *The Trial Court's Order Granting Summary Judgment*

On March 13, 2013, in advance of the March 15, 2013 hearing on the motion for summary judgment/summary adjudication, the trial court issued a tentative ruling in favor of the Bank defendants. The tentative ruling noted the initial declarations were legally deficient, citing Code of Civil Procedure section 2015.5 and *Kulshrethsa v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 611 (declaration is defective under Code Civ. Proc., § 2015.5 "absent an express facial link to California and its perjury laws") and ordered the Bank defendants to provide corrected declarations at the time of the hearing. At the hearing on their motion two days later, the Bank defendants advised the court, without objection, corrected declarations had been filed with the court and served on Tatum on December 20, 2013. The court acknowledged it had not noticed the corrected declarations in the file and would consider them.

Following the hearing, the trial court granted the motion for summary judgment, concluding Bank of New York Mellon, as trustee for the securitized trust, had acquired the secured note in June 2003 and therefore owned the note and the security at the time the trustee was substituted and the foreclosure sale conducted. Tatum failed to provide any evidence at all to counter that position. The court found the remaining causes of action, each of which was based on the allegation the foreclosure was wrongful, also failed as a matter of law. Judgment was entered in favor of the Bank defendants.

## DISCUSSION

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) We view the evidence in the light most favorable to the nonmoving party, liberally construing the opposing party's evidence and strictly

8

scrutinizing the moving party's. (*Schachter*, at p. 618; *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284.)

2. *The Trial Court Did Not Err in Granting the Bank Defendants' Motion for Summary Judgment*

To set aside a trustee's sale based on wrongful foreclosure, the plaintiff/borrower must establish the trustee under a deed of trust with a power of sale caused an illegal, fraudulent, or willfully oppressive sale of real property. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1449; *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1063.) The element of wrongfulness can be satisfied by showing the trustee failed to comply with the statutory requirements for notice or conduct of the sale. (*Lona v. CitiBank, N.A.* (2011) 202 Cal.App.4th 89, 101.) In addition, unless the defect in sale is plain on the face of the deed, the plaintiff/borrower must also establish he or she suffered prejudice from the procedural irregularity and either tendered the amount of the indebtedness or was excused from the tender requirement. (*Multani,* at p. 1449; *Chavez,* at p. 1063; see generally *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 877-878 [discussing difference between void and voidable sale].)

Tatum's third amended complaint alleged that Bank of New York Mellon had no beneficial interest in the property in November 2009 when it purported to substitute First American as the trustee under the deed of trust, a violation of the statutory requirements governing nonjudicial foreclosure sales. (See Civ. Code, § 2934a, subd. (a)(1) [only beneficiaries under trust deed, or their successors in interest, have authority to substitute trustee under deed of trust].) Assuming Tatum has standing to set aside the foreclosure sale on this basis,[6] summary judgment was proper: The transfer of the promissory note to

---

6      The appellate courts are divided whether a borrower has standing to challenge a foreclosure when he or she is not the party aggrieved by the improper assignment. (Compare *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 [borrower is not aggrieved by the ineffective assignment; "[t]he true victim [is] an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note"]; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 [same] with *Glaski v. Bank of America*, *supra*, 218 Cal.App.4th at pp. 1094-1096 [if assignment of note and

9

Bank of New York Mellon as trustee for the BNY securitized trust in June 2003 also effected a transfer of the deed of trust securing the loan without need for any formal assignment.

a. *The Bank defendants met their burden on summary judgment*

For more than a century California law has been clear the transfer of a debt instrument automatically carries with it the security for the debt; thus, a separate assignment of the deed of trust or other security instrument is unnecessary when the debt itself has been properly transferred. (See Civ. Code, § 2936 [assignment of the debt "carries with it the security"]; *Lewis v. Booth* (1935) 3 Cal.2d 345, 349 [The proper transfer of the secured note carried with it "the deed of trust without [need for] other assignment. A lien is but an incident of the debt secured, and cannot be transferred apart therefrom. A transfer of the debt carries with it the lien."]; *Adler v. Sargent* (1895) 109 Cal. 42, 48 [assignment of the promissory note carried with it the security interest even though assignment of debt was unrecorded; therefore, later recorded assignment of trust deed was immaterial and did not take precedence over prior assignment of secured note]; see also Civ. Code, § 1084 ["[t]he transfer of a thing transfers also all its incidents, unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself"]; *Santens v. Los Angeles Finance Co.* (1949) 91 Cal.App.2d 197, 202 ["the transfer of the note carried with it the security and the trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note"]; *Geier, Show Me Your Papers: Sales and Assignments of Secured Real Estate Loans and the California Foreclosure Process* (Dec. 2011) Vol. 22, No. 3 Miller & Starr, Real Estate Newsalert, p. 10 ["transfer of the debt instrument automatically carries with it the security and a

---

deed of trust is void at inception, borrower has standing to assert wrongful foreclosure claim based on trustee's failure to adhere to statutory requirements for foreclosure sale].) The question whether, in an action for wrongful foreclosure on a deed of trust securing a home loan, the borrower has standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly making the assignment void is currently pending before the Supreme Court. (See *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973.)

separate assignment of the mortgage or deed of trust is not necessary if the note has been properly transferred," fns. omitted].)

The Bank defendants established Tatum's loan was one of several loans securitized, deposited into a trust and transferred to Bank of New York as trustee for the securitized trust in June 2003. They also demonstrated the loan remained in the trust at the time Bank of New York Mellon, on behalf of the BNY securitized trust, substituted the trustee on Tatum's trust deed. In contending the Bank defendants failed to meet their burden on summary judgment, Tatum points to the defect in the Bank defendants' original declarations. He suggests the court made its summary judgment ruling "contingent on the filing of corrected declarations at the hearing" and argues such "late-filed" declarations violated the time prescriptions in the summary judgment statute. (See Code Civ. Proc., § 437c, subd. (a) ["[n]otice of motion and supporting papers shall be served on all other parties to the action at least 75 days before the time period appointed for the hearing"].)

Tatum's argument focuses on the wrong court document. Although the court issued a tentative ruling two days before the hearing indicating it would grant summary judgment following the filing of properly attested declarations, at the hearing it made clear it would rule on the summary judgment motion based on the corrected declarations that had already been filed. As for the timeliness of those declarations, it is undisputed they were filed and served by overnight mail on December 20, 2012, 85 days before the March 15, 2013 hearing (and 74 days before Tatum filed his opposition memorandum). Even accounting for two days for overnight service (see Code Civ. Proc., § 1013, subd. (c)), the corrected declarations were served well within the statutorily prescribed notice period. The court did not err in considering them.

Tatum also contends the Bank defendants made a judicial admission in connection with their demurrer that Bank of New York Mellon, as trustee of the securitized trust, acquired a beneficial interest in Tatum's deed of trust in October 2009. Having made that admission, he argues, they were precluded from arguing the bank actually obtained a beneficial interest in the trust deed in June 2003.

11

"The admission of fact in a pleading is a 'judicial admission'" that prevents consideration of contrary evidence. (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271; see *ibid.* ["'"[a] fact admitted by the pleadings should be treated as 'found'"'"]; *Braverman v. Rosenthal* (1951) 102 Cal.App.2d 30, 32 [same].) To be considered a binding judicial admission, "the declaration or utterance must be one of fact and not a legal conclusion, contention, or argument." (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 384 ["judicial admissions involve facts, not legal theories or conclusions"]; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 709 [same].) Generally, unlike a complaint or an answer, a "demurrer 'makes no binding judicial admissions'" but rather admits the allegations in the complaint and tests its legal sufficiency. (*Kenneth Mebane Ranches v. Superior Court* (1992) 10 Cal.App.4th 276, 291; accord, *Griffin v. County of Colusa* (1941) 44 Cal.App.2d 915, 918.)

Here, as part of their demurrer, the Bank defendants argued that MERS, as Countrywide's nominee, had assigned Tatum's deed of trust to them "effective October 2009." Even if the doctrine of judicial admissions applied to that fact, which the Bank defendants requested be judicially noticed, the doctrine would only preclude contrary evidence of a different date the deed of trust was formally assigned. Rather than alleging a different assignment date, however, the Bank defendants shifted focus from the formal assignment of the deed of trust to the legal effect of the transfer of the promissory note in June 2003. That change in legal theory does not implicate, much less violate, the judicial admissions doctrine. (See *Stroud v. Tunzi, supra,* 160 Cal.App.4th at p. 384; *Griffin v. Colusa County, supra*, 44 Cal.App.2d at p. 918.)

c. *Tatum failed to raise a triable issue of material fact as to Countrywide's transfer of the secured note to Bank of New York Mellon in June 2003*

Tatum contends the uncertainty as to the effective date of the assignment of the deed of trust is sufficient, by itself, to raise a triable issue of material fact whether Bank of New York Mellon had any beneficial interest in the property at the time it purported to substitute First American as trustee under the deed of trust. However, as explained,

12

Tatum's reliance on the date the trust deed was formally assigned is misplaced. To defeat summary judgment, he had to raise a triable issue of material fact whether the bank (or its principal) had any beneficial interest in the secured note. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271-272 (*Fontenot*); *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 (*Herrera*).)

In *Fontenot* the plaintiff/borrower attempted to state a claim for wrongful foreclosure based, in part, on the allegation the assignment of the deed of trust from MERS to HSBC Bank USA, N.A. (HSBC) took place after HSBC had purported to act as beneficiary under a security interest and substitute the trustee of the deed of trust. In concluding the plaintiff failed to state a claim for wrongful foreclosure based on HSBC's lack of beneficial interest in the property at the time it substituted the trustee, the *Fontenot* court held the plaintiff was required, and failed, to allege HSBC had no interest in the secured note itself: "Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to the plaintiff. [Fn. omitted.] To state a claim, plaintiff was required to allege not only that the purported MERS assignment [of the deed of trust] was invalid, but also that HSBC did not receive an assignment of the debt in any other manner. There is no such allegation." (*Fontenot, supra,* 198 Cal.App.4th at pp. 271-272.)

*Herrera* similarly held, to set aside a trustee's sale, the plaintiff had to allege more than simply the party purporting to have a beneficial interest in a deed of trust had not been assigned the deed of trust at the time it substituted the trustee. The plaintiff had to allege the foreclosing party had no beneficial interest in the secured note itself: "[H]ere, the note could have been assigned to OneWest and Fannie Mae, who then would have had the authority to foreclosure, regardless of MERS's assignment [to either one of them] of the [deed of trust]." (*Herrera, supra,* 205 Cal.App.4th at p. 1506.)

In arguing summary judgment was improper, Tatum relies almost exclusively on *Sacchi v. Mortgage Electronic Registration Systems, Inc.* (C.D. Cal. June 24, 2011,

13

No. CV-11-1658) [2011 U.S. Dist. Lexis 68007] an unpublished federal district court decision. In *Saachi* the plaintiff filed a complaint to preclude a pending foreclosure sale alleging the lender (RCS) had no beneficial interest in the property at the time it purported to substitute the trustee on a deed of trust to plaintiff's property. (As in the instant case, it was alleged MERS had assigned the deed of trust to the lender only after the lender purported to substitute the trustee on the trust deed). RCS, along with the other defendants, moved to dismiss the complaint, contending it had a beneficial interest in the deed of trust "by way of various agreements between different creditors." The district court denied the motion to dismiss. Most pertinently, the court declined to address the various agreements the defendants cited to demonstrate a transfer of the secured loan, observing those agreements and arguments relating to them were more properly addressed in a summary judgment proceeding. (*Id.* at *8.)

*Saachi*, decided prior to *Fontenot* and *Herrera*, did not address the legal effect of the transfer of the loan, holding simply the case was not amenable to the analysis of the complex transactions involved on a motion to dismiss. The procedural posture of the instant case on summary judgment is, of course, very different.[7] To defeat summary judgment, Tatum was required to raise a triable issue of material on the issue of Bank of New York Mellon's beneficial interest in the loan in November 2009 when it executed the substitution of trustee.

Tatum contends he did raise a triable issue of material fact whether his note was transferred to the securitized trust in June 2003. None of his cited evidence supports that assertion. First, Tatum observes Ventura admitted in his deposition he had no personal

_____

[7]    One commentator has suggested *Fontenot* and *Herrera,* both decided on demurrer, would have been more properly decided on summary judgment because, in requiring the plaintiff to allege a lack of beneficial interest in an unrecorded note, both cases effectively required the plaintiff to allege "facts which were solely known to the foreclosing parties . . . ." (*Geier, Show Me Your Papers:  Sales and Assignments of Secured Real Estate Loans and the California Foreclosure Process, supra,* Vol. 22 No. 3 Miller & Starr, Real Estate Newsalert, at p. 19.)  Of course, that criticism would not apply to the instant matter.

knowledge of the transaction; his testimony was based on his review of the documents in his company's possession. The trial court properly concluded Ventura's lack of personal knowledge of the underlying transaction was not material to the Bank defendants' motion. Once Ventura authenticated the relevant documents, the trial court could rely on their legally operative language without regard to Ventura's testimony. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 755; *Fontenot, supra,* 198 Cal.App.4th at p. 265.)

Similarly, Tatum's assertion Flannigan "equivocated" in his declaration when he stated "it appears that the mortgage file pertaining to the loan, which included the promissory note . . . [was] sent to [Bank of New York Mellon]" is of no import. What Tatum characterizes as equivocation is simply an acknowledgment by Flannigan that his testimony, like Ventura's, was based on a review of the records rather than any personal involvement with the transaction. The court's summary judgment ruling was based on properly authenticated documents, not Flannigan's or Ventura's interpretation of them.

Tatum's attention to Ventura's testimony that he believed Countrywide owned the note as of the date of his deposition is also misplaced. At the threshold, although not acknowledged by Tatum, just after making that statement Ventura repudiated it, explaining, "I truly could not tell you who owns this note. I could tell you who originated it. But, yeah, I apologize. I can only tell you who originated it." Moreover, as explained, there is nothing about this testimony—properly objected to as a legal conclusion—that undermined the evidence in the PSA and mortgage loan schedule that Tatum's loan was part of the securitized trust transferred to Bank of New York Mellon in June 2003.

Finally, Tatum observes the copy of the promissory note attached to Gregory's declaration was not indorsed while the copies attached to Flannigan's and Ventura's declarations were. This difference fails to create a triable issue of material fact as to whether Countrywide had conveyed the note to the BNY securitized trust as the Bank defendants contended. The note attached to Gregory's declaration contained a stamp certifying it as a "true and correct copy of the original note"—that is, the note as signed

15

by Tatum in May 2003.  The other copies were made after the note had been conveyed to the securitized trust.  As Johnson explained, an indorsement is only placed on the actual note when it is sold or transferred.

In sum, the Bank defendants established that Tatum's note was transferred to Bank of New York Mellon as trustee for the BNY securitized trust effective June 30, 2003. Under California law that transfer necessarily included the trust deed, giving the trust's certificate holders a beneficial interest in the property and Bank of New York Mellon, as their trustee, the legal authority to act on their behalf in November 2009.  Tatum failed to raise any triable issues of material fact on this question.  Tatum's action, dependent entirely on allegations that the wrong entity substituted the trustee under the trust deed in November 2009, fails as a matter of law.[8]

---

[8]  The Bank defendants also cite the Commercial Code for the proposition that, as the holder of a note indorsed in blank, they had the power to enforce it, including by initiating a foreclosure sale.  (See Cal. U. Com. Code, § 3205, subd. (b) ["[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed"].)  In light of our holding that Bank of New York Mellon had the legal authority, on behalf of the BNY trust, to substitute the trustee on Tatum's deed of trust in accordance with Civil Code section 2934a, subdivision (a)(1), we need not address whether the Bank defendants should also prevail on the ground they satisfied the Commercial Code requirements.  (See *Debrunner v. Deutsche Bank Nat'l Trust Co.* (2012) 204 Cal.App.4th 433, 440-441 [procedures to be followed in nonjudicial foreclosure are governed by Civ. Code, §§ 2924, et seq. not the Commercial Code]; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154-1157 [same].)

16

## DISPOSITION

The judgment is affirmed. The Bank defendants are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.