Filed 8/31/15  P. v. Wood CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C074717 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F2417) |
| v. | |
| BENJAMIN RANDOLPH WOOD, | |
| Defendant and Appellant. | |

For several years prior to January 1, 2012, Penal Code section 245, subdivision (a)(1) provided, in relevant part:  "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished . . . ." (References to undesignated statutes are to the Penal Code.)  Operative January 1, 2012, Assembly Bill No. 1026 (AB 1026) amended section 245 by deleting the phrase "or by any means of force likely to produce great bodily injury" from subdivision (a)(1) and placing it in newly enacted subdivision (a)(4).  (Stats. 2011, ch. 183, § 1.)  Thus, the new subdivision of section 245 reads:  "(a)(4)  Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be

1

punished . . . ." (Hereafter, section 245, subdivision (a)(1) and section 245, subdivision (a)(4) shall be referred to as section 245(a)(1) and section 245(a)(4).)

In 2012 defendant, mistakenly believing that the victim had vandalized his car, struck the victim with a fire extinguisher and then with his fists. A jury convicted defendant of assault with a deadly weapon (§ 245(a)(1)—count 1) and assault by means of force likely to produce great bodily injury (§ 245(a)(4)—count 2). In a trial by court, the court found defendant had three prior strike convictions (§ 667, subds. (b)-(i)), two of which also qualified for five-year sentence enhancements pursuant to section 667, subdivision (a)(1).[1] Defendant was sentenced to 35 years to life in prison, consisting of 25 years to life on count 1 plus 5 years each for the two serious priors, and 25 years to life on count 2, that term stayed pursuant to section 654.

On appeal, defendant contends (1) he may not be convicted of violations of both section 245(a)(1) and section 245(a)(4) during the course of a single assault because each subdivision describes a different way of violating section 245; (2) the 25-years-to-life sentence imposed for the violation of section 245(a)(4) must be vacated because the offense of assault by means of force likely to produce great bodily injury does not qualify for indeterminate sentencing; (3) the five-year enhancement imposed under section 667, subdivision (a)(1) for discharge of a firearm in a grossly negligent manner (§ 246.3) must be vacated because the evidence was insufficient to prove section 246.3 is a serious felony; and (4) the trial court's denial of defendant's request to strike one or more of his prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) was an abuse of discretion because the trial court relied on factors unsupported by substantial evidence.

---

[1] Two of the serious priors were robberies and were incurred in the same court proceeding.

The People respond that defendant's convictions under section 245(a)(1) and section 245(a)(4) are valid because they were based upon two separate assaults by defendant—the first with a fire extinguisher, the second with his fists. The People agree that the indeterminate term imposed on count 2 must be vacated, but they disagree that the five-year enhancement must be stricken and that the court abused its discretion in denying defendant's *Romero* request.

We shall reverse defendant's conviction on count 2 and order that count dismissed.[2] We reject defendant's contentions that the evidence was insufficient to prove his prior conviction for violation of section 246.3 is a serious felony and that the trial court abused its discretion in denying his *Romero* request.

**Facts**

About 4:00 a.m. on March 26, 2012, Willado Ramirez was driving his vehicle, delivering newspapers in Redding. The driver's side window was down. While Ramirez was stopped at a traffic light, a vehicle pulled up behind him. Defendant exited the vehicle, went to the driver's side of Ramirez's vehicle, and struck Ramirez in the head two or three times with a fire extinguisher. As Ramirez was attempting to ward off the fire extinguisher, the extinguisher activated, releasing some of its contents onto Ramirez and into his car. Defendant let go of the fire extinguisher and struck Ramirez with his fists three times in the back of the head.

Ramirez asked defendant why he was hitting him and explained that he was delivering newspapers. Defendant realized his mistake, apologized to Ramirez, and said he thought Ramirez was the person who had broken into defendant's pickup. Defendant asked Ramirez not to report him to the police and drove Ramirez to defendant's home, where he obtained a towel for Ramirez because he was bleeding. At Ramirez's request,

---

[2] Our reversal and dismissal of count 2 renders moot defendant's second contention that the indeterminate term imposed on count 2 must be stricken.

defendant drove Ramirez to the newspaper's office, where Ramirez was able to find someone to take over his route.  Still apologizing and asking Ramirez not to report him to the police, defendant drove Ramirez to the medical center and offered to pay his hospital bills.  Defendant was arrested at the medical center after Ramirez told medical personnel that it was defendant who had assaulted him.

Defendant testified that about two weeks before he assaulted Ramirez, he and his wife were awakened about 3:00 or 4:00 a.m. by their car's alarm going off, but they were unable to determine who was responsible.  Sometime after midnight on the day in question, defendant and his wife were again awakened by their car's alarm going off.  Defendant and his wife went in search of the suspect and saw a Honda driven by a "thug"-like driver, who looked in defendant's direction and then "[took] off real fast."

Defendant and his wife followed the Honda, and when it stopped at a light, defendant got out of the pickup with the fire extinguisher because he expected any occupants to get out and start a fight.  Defendant approached quickly and asked Ramirez what he was doing.  A struggle ensued over control of the fire extinguisher and Ramirez got hit with it.  Ramirez, who was bloody, told defendant he was delivering papers.  Defendant apologized and aided Ramirez in obtaining medical assistance.  Defendant claimed that he hit Ramirez only once with the fire extinguisher and never hit him with his fists.

Defendant was arrested at the medical center and released that same day with directions to appear in court on a specified date.  Defendant failed to appear and was arrested in Los Angeles about nine months later.

## DISCUSSION

## I

Defendant contends that as amended by AB 1026, section 245(a)(1) and section 245(a)(4) are not separate offenses but instead constitute different ways of committing the same offense.  Therefore, even if his conduct violates both

4

subdivisions (a)(1) and (a)(4), he may be convicted of only one violation of section 245 for one assault. We agree.

"In construing statutory language, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citation.] If, on the other hand, the statutory language is unclear or ambiguous and permits more than one reasonable interpretation, we may consider various extrinsic aids to help us ascertain the Legislature's intent, including legislative history . . . ."[3] (*People v. Connor* (2004) 115 Cal.App.4th 669, 678.)

Prior to its amendment by AB 1026, section 245(a)(1) "describe[d] two different ways of committing a prohibited assault: (1) by use of a deadly weapon or instrument other than a firearm *or* (2) by means of force likely to produce great bodily injury." (*People v. Martinez* (2005) 125 Cal.App.4th 1035, 1043.) And it was settled that "[s]ection 245 . . . defines only one offense . . . . The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 (*Mosley*); see *People v. Delgado* (2008) 43 Cal.4th 1059, 1070, fn. 4.)

As amended by AB 1026, section 245 is not clear on its face as to whether the amendment was intended to create separate offenses or to continue, as had previously been the case, providing different ways of violating section 245, thereby creating an ambiguity. The legislative history, however, resolves the issue. The stated purpose behind the enactment of AB 1026 was efficiency: "AB 1026 will make it easier for prosecutors and defense attorneys to determine whether or not a defendant's prior

---

[3] We granted defendant's request that we take judicial notice of the legislative history of AB 1026.

5

conviction for assault under Penal Code Section 245(a)(1) involved an assault on a person with a deadly weapon[4] or by any means of force likely to produce great bodily injury.[5]  Under California law, an assault with a deadly weapon can be treated more severely than an assault likely to produce great bodily injury."  (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 4.)  *AB 1026 does not create any new felonies or expand the punishment for any existing felonies.  It merely splits an ambiguous code section into two distinct parts."* (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1026, *supra*, pp. 4-5, italics added.)

Accordingly, we conclude that in enacting AB 1026, it was not the Legislature's intent to create separate section 245 offenses for assaults of the nature committed in this case; instead, the intent was to more clearly describe different ways of violating section 245.

The People do not directly challenge the foregoing conclusion.  Rather, they argue that the convictions in counts 1 and 2 were valid in this case because each was based on a separate assault on Ramirez—count 1, when defendant struck Ramirez with the fire extinguisher, and count 2, when defendant struck Ramirez with his fists after the fire extinguisher released some of its contents.

The People's argument does not comport with their argument at trial.  Although the People argued to the jury that each count constituted a separate crime,[6] the People did not factually separate count 1 and count 2 as the People now claim on appeal.  Instead,

---

[4]  Assault with a deadly weapon is a serious felony.  (§ 1192.7, subd. (c)(31) ["assault with a deadly weapon . . ."].)

[5]  Assault by means of force likely to produce great bodily injury is not a serious felony.

[6]  The court likewise instructed the jury that each count constituted a separate offense.

the People argued that defendant's guilt on count 1 was based on his hitting Ramirez with the fire extinguisher, and that count 2 was based on defendant's use of "the fire extinguisher as well as his fists to apply force to Mr. Ramirez by hitting him . . . ." Thus, contrary to the position the People now take on appeal, the prosecution proceeded on the theory that defendant's use of the fire extinguisher could be used to prove both counts 1 and 2. Indeed, the jury was never asked or instructed to determine whether defendant's assault with just his fists, which consisted of three punches to the back of Ramirez's head from outside a car, was likely to cause great bodily injury. Accordingly, we conclude the case was prosecuted on the theory of a single assault that violated both section 245(a)(1) and section 245(a)(4).

Because section 245 remains a single offense that may be violated by either of the means described in subdivisions (a)(1) and/or (a)(4), only one conviction may stand. (See *Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5 ["The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon"].) We shall reverse count 2 and order it dismissed.

## II

Defendant contends the five-year enhancement imposed under section 667, subdivision (a)(1) for the prior section 246.3 conviction must be stricken because the evidence was insufficient to show that he personally discharged a firearm, which is required to make section 246.3 a serious felony. We reject the contention.

Section 246.3 provides, in relevant part: "(a) [A]ny person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense . . . ." Although section 246.3 is not listed by statute as a serious felony in section 1192.7, subdivision (c), it may become one under section 1192.7, subdivision (c)(8)'s description of "any felony in which the defendant personally uses a firearm." (See *People v. Golde* (2008) 163 Cal.App.4th 101, 112-113 [defendant may be convicted under section 246.3 as an aider and abettor or as personally

7

having discharged the firearm, but the conviction is a serious felony only in the latter case].)

Here, the court found defendant's prior conviction for violation of section 246.3 was a serious felony within the meaning of section 667, subdivision (a)(1) based upon People's exhibit No. 17. Exhibit No. 17 consists of three documents—the information charging defendant with the section 246.3 violation; the court minute order, reciting the plea and defendant's sentence; and the abstract of judgment, reflecting the sentence.

The People advance two arguments in response to defendant's contention, neither of which has merit. First, the People urge the violation of section 246.3 was proved to be a serious felony because "[n]othing in the charge suggests that anyone other than [defendant] had committed the crime"; and second, the violation was proved because the information alleged that the section 246.3 violation was a serious felony within the meaning of section 1192.7, subdivision (c)(8) and defendant pleaded guilty to the charge.

The People's first argument misses the point. It is the People who bear the burden of proving that an alleged prior conviction was for a serious felony. "The prosecution has the burden of proving beyond a reasonable doubt each element of a prior conviction used to enhance a defendant's sentence." (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 128.) The fact that no one else was charged in the information does not eliminate the possibility that defendant's guilt of violating section 246.3 was based upon his being an aider and abettor to the shooter. The People did not supply either a transcript of defendant's plea or a factual basis for it. Accordingly, we reject this argument.

The People's second argument fares no better. The first paragraph of the information contained in exhibit No. 17 alleges defendant's violation of section 246.3. That section 246.3 is a serious felony is alleged in a separate paragraph. A " '[d]efendant's guilty plea constitute[s] "a judicial admission of every element of the offense charged" [citation], but only that; it [does] not admit other allegations in the pleadings.' " (*People v. Trujillo* (2006) 40 Cal.4th 165, 176.) Being a serious felony is

8

not an element of section 246.3; it is an additional sentencing factor. Hence, defendant's guilty plea to the offense is, by itself, insufficient to establish that he was also admitting the offense was a serious felony.

Notwithstanding our rejection of the People's arguments, as we explain, exhibit No. 17 compels the conclusion that defendant personally discharged the firearm in his commission of the section 246.3 offense.

" '[T]he judgment challenged on appeal is presumed correct, and it is the [defendant's] burden to affirmatively demonstrate error.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) Pursuant to Evidence Code section 664, "It is presumed that official duty has been regularly performed." In the absence of evidence to the contrary, a trial court's docket sheet "is entitled to a presumption of regularity and must be deemed to speak the truth." (*People v. Anderson* (1991) 1 Cal.App.4th 318, 322.) Similarly, the presumption "applies to the duties of clerks of [the] court." (*Fergus v. Songer* (2007) 150 Cal.App.4th 552, 565.) It is also the case that "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)

The second document of exhibit No. 17 is the trial court's minute order containing the clerk's minutes of defendant's plea entered May 9, 1997, and the trial court's sentencing of defendant. The minutes recite that, pursuant to the plea agreement, defendant pleaded guilty to sections 243.6 and 12020, subdivision (a) and that he admitted both priors within the meaning of section 667, subdivisions (a) and (b) through (i). The minute order further states that count three (possession of a firearm by a convicted felon) was dismissed in the interests of justice, that the second prior (robbery) was to be stricken, and that the sentence was stipulated to be 12 years 4 months in state prison.

Finally, the minutes show that defendant waived both his right to be referred to the probation department for an evaluation and his right to additional time before imposition

9

of sentence. For the section 246.3 conviction, defendant was sentenced to the upper term of three years, doubled to six years because of the strike, plus five years pursuant to section 667, subdivision (a), a total of 11 years. For the section 12020, subdivision (a) conviction, defendant was sentenced to a subordinate term of 16 months. The sentence was, per the plea agreement, 12 years 4 months.[7]

Given the presumptions that the trial court knows and applies the governing law and that the clerk's documents are accurate, the trial court would not have imposed the five-year enhancement under section 667, subdivision (a) *unless* the section 246.3 offense was a serious felony. The section 246.3 offense could be a serious felony only if there was sufficient evidence that defendant personally discharged the firearm. Consequently, defendant's contention is rejected.[8]

### III

Defendant contends the trial court abused its discretion when it denied his request to strike one or more of his prior strike convictions because several of the trial court's findings were without evidentiary support. We disagree.

The California Supreme Court has made clear that "in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code

---

[7] The third document was the abstract of judgment, which simply reflected the sentencing set forth in the second document.

[8] We recognize that the parties did not address our resolution of whether sufficient evidence supported the trial court's finding that defendant personally used a firearm. However, Government Code section 68081, which requires an appellate court to permit supplemental briefing on issues as to which the parties have had no opportunity for input, "does not require that a party actually [has] briefed an issue; it requires only that the party had the opportunity to do so." (*People v. Alice* (2007) 41 Cal.4th 668, 677.) The parties clearly had such an opportunity because the People's exhibit No. 17 was before the trial court when it found the evidence sufficient.

10

section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492.)

In denying defendant's *Romero* request, the court stated it had considered the criteria for determining whether defendant's conduct fell within "the spirit of the three-strikes law." The court observed that defendant was 37 years old; he had been employed when he was not incarcerated; and that he "[did] have prospects," including a wife and family. Nevertheless, the court concluded it would deny the request because this was "not a case [where] striking one strike would do any good" because "multiple strikes" were found true. And even though the current offense would not by itself "justify a life sentence necessarily," defendant's prospects as they "relate[ ] to criminal activity" were "dismal." Defendant's prior offenses were "violent, dangerous, and there are a multitude of them."[9] Defendant's history demonstrates "he doesn't conform well on probation or

---

[9] Defendant's sustained juvenile adjudications consist of possession of a concealable firearm (former Pen. Code, § 12101, subd. (a)) in 1989 and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)) in 1992. Defendant's prior felony convictions consist of two counts of second degree robbery (Pen. Code, § 212.5, former subd. (b)) in 1993,

11

comply with court orders given" in that he absconded to Southern California after his release from jail in this case. Defendant sees himself as a victim, yet it was he who came up behind the victim with a fire extinguisher and "started cracking him in the head." The court concluded that defendant was "a danger to society" within the meaning of *Romero* and a "recidivist criminal," and did not "believe that [defendant] would change."

The first factual error asserted by defendant is that the section 246.3 offense was a strike. However, as discussed in part II, we have concluded section 246.3 was indeed a strike.

The second asserted factual error was the court's conclusion that "[t]his is not a case [where] striking one strike would do any good." This assertion, like the first, is premised on defendant's mistaken belief that the section 246.3 offense was not a strike, when in fact it is. Hence, the court was correct: striking one prior strike would still leave defendant with two such strikes and therefore no change to his sentence.

The last assertion of factual error is the court's comment that "there seems to be an attitude that he could give a damn basically about his obligations to society or the criminal justice system or anybody who has ever cared for him." As defendant sees it, the court's comment is belied by the record because once defendant realized Ramirez was not the person who had vandalized his car, defendant engaged in the "extraordinarily unusual" conduct of getting Ramirez a towel to stop the bleeding, driving him to the hospital, and remaining at the hospital until defendant was arrested by the police. Additionally, there were many letters submitted on defendant's behalf contrary to the court's finding.

Indeed, defendant's assistance to Ramirez was "extraordinarily unusual" conduct, but this was clearly known to the court through the trial testimony and the probation

---

evading a police officer (Veh. Code, § 2800.2) in 1995, negligent discharge of a firearm (Pen. Code, § 246.3) in 1997, and burglary (Pen. Code, § 459) in 2004.

report. And the letters on defendant's behalf were known to the court because they were contained in his *Romero* request. The court's comment was expressly directed to letters defendant had sent to the court and the probation officer. In the letter to the court defendant portrays himself as a victim of circumstances and tries to bargain with the court for a reduction of his offenses to misdemeanors in exchange for his giving testimony in a pending murder case and other assault cases he had witnessed while in the county jail.

In the letter to the probation officer defendant noted he had just recently moved to the Redding area and had become a victim of crime, apparently referring to the damage to his vehicle. Defendant stated that the Redding area was experiencing "a wave of crime" and because the police were unable to cope with it defendant stepped in to help his "neighbors" and his "new community." As to the assault on Ramirez, defendant never intended to harm anyone, and it was not until Ramirez balled up his fists and moved them toward defendant's face that defendant responded physically.

The letters are self-serving. Defendant's letter to the court appears to be an inartfully veiled offer to testify in unrelated criminal cases in exchange for reducing his offenses to misdemeanors. And in his letter to the probation officer defendant portrays himself as twice being victimized: first, when his vehicle was broken into, and second, when in an effort to aid the police, his neighbors, and his community in stopping crime, he chased down the person he believed had broken into his vehicle and verbally confronted him, reacting physically only after the person moved his fists toward defendant's face. These circumstances amply support the court's comment.

Even if the court's interpretation of the letters overstates defendant's selfishness and lack of caring, the letters were not a pivotal point in the court's refusal to grant defendant's *Romero* request. Instead, it was defendant's criminal record, which the court accurately described as "dismal," that showed continuing conduct demonstrating he was a danger to society. Accordingly, the court properly denied defendant's *Romero* request.

## IV

The trial court awarded defendant 221 days actually served in presentence custody plus 220 days for good conduct.  The parties agree that defendant is entitled to 230 days of actual credit and 230 days of conduct credit.  We agree and shall modify the judgment to reflect these additional days.

## DISPOSITION

The conviction of count 2 is reversed and the court is directed to dismiss it.  The judgment is modified to award defendant 230 days of presentence custody credit and 230 days of conduct credit.  In all other respects, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.


                                            RAYE            , P. J.



We concur:



        HULL            , J.



        DUARTE          , J.

14